Lamonte BAXTER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A04–0201–PC–6.

Court of Appeals of Indiana.

Sept. 19, 2002.

Christopher A. Cage, Hulse Lacey Hardacre Austin & Shine, P.C., Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant Lamonte Baxter ("Baxter") appeals the trial court's revocation of his probation. We reverse.

### Issues

Baxter raises three issues for review, which we consolidate and restate as follows:

I. whether the trial court erred in admitting a document into evidence at the revocation hearing; and

II. whether the evidence was sufficient to support the trial court's revocation of his probation.

### Facts and Procedural History

On March 29, 1999, in Madison Superior Court, Baxter pleaded guilty to Class C felony intimidation, Class D felony pointing a firearm, and Class D felony possession of a sawed-off shotgun. On that date, the trial court sentenced Baxter to four years on the Class C felony conviction and to eighteen months on each of the Class D felony convictions, with all sentences to run concurrently with each other but consecutive to the sentence imposed in another cause. The trial court suspended the sentences and ordered Baxter to serve four years of probation on in-home detention.[1] Baxter's in-home detention was transferred to Marion County, where he resided.

On May 19, 2001, as they were walking to a bus stop, Tien Tran ("Tran") and his brother were "flagged down" by two men who informed them of a compact disc player and wheel rims for sale. Tr. at 33. Tran and his brother followed the men to the backyard of a house, where they were shown a set of scratched rims. Tran told the men that he did not like the rims. The men responded that they had new rims inside the house and invited Tran and his brother inside to look at the rims. When Tran and his brother entered the house, two men held Tran's brother, and three other men hit Tran. One of the five men had a gun, and another sat on top of Tran and hit him. The men took Tran's wallet, which contained his driver's license and approximately $200 in cash, and Tran's brother's cell phone. Two of the men took Tran to another location, where he got money from friends and gave it to the men. The men told Tran that they would kill his family if he went to the police. Tran reported the incident to the police. The following day, Tran identified Baxter from a six-person photo array as one of the men involved in the robbery.

On or about May 24, 2001, the State charged Baxter with Class B felony robbery. On May 30, 2001, the State filed a notice of violation of Baxter's in-home detention specifically alleging that he had violated the conditions of his placement by being charged with robbery. The violation notice contained the following explanatory

---

1. The trial court orally advised Baxter that while on probation, he was required to, *inter alia*,

 > obey the rules and regulations of In Home Detention, obtain [sic] from alcohol and illicit drugs, submit to drugs and urine test within any three hour notice. And pay for the cost, he has to pay the cost of this action within 30 days of being placed on In Home Detention. He has [to] pay an initial fee of fifty-dollars ($50.00), but not Probation Users fees because he's on In Home

 > Detention ah ... he has to obey all the laws of the State of Indiana, Municipal and Federal, behave well in society and notify Probation within 48 hours of any new arrests, allow Probation Officer to visit home, place of employment and other location[s] at all times.

 Tr. at 9–10. The record is silent as to whether Baxter was ever advised, either orally or in writing, that he was required to pay additional fees for the administration of his in-home detention.

notation: "Apparently, this offense of Robbery happened inside [Baxter's] residence. [Baxter] reported no schedule on May 19, 2001. The electronic monitoring device showed that [Baxter] was home during the alleged incident. [Baxter's] address is 1825 N. Bellview Ave., Indianapolis, IN[.]" Appellant's App. at 8. The violation notice also indicated that Baxter was $565 in arrears in his payments for the in-home detention program.

On December 6, 2001, at an initial hearing on the alleged probation violation, the trial court informed Baxter, who appeared pro se, that the notice's indication of his arrearage was "just a note" and that "[t]he real reason [he was] being violated is because [he was] being charged with Robbery in Indianapolis." Tr. at 23. The trial court appointed counsel for Baxter and set the matter for an evidentiary hearing on December 17, 2001.

On that date, the parties stipulated that Baxter was on in-home detention on May 19, 2001, and that he "was familiar with and agreed to abide by [the rule] that he wouldn't violate the laws of the State Of Indiana or the United States[.]" *Id.* at 16. By counsel, Baxter stipulated that he owed a $565 arrearage. The trial court then continued the matter to December 26, 2001.

On that date, Tran testified as the State's only witness. The following colloquy occurred when the State sought to have Tran identify Baxter as one of the men who had allegedly robbed him:

> Q So, the Police Officer had you look at some photographs?
>
> A Uh ... uh.[2]
>
> Q And were you, did the Officer ask you if you recognize anyone in those photographs ... let me ask you in a

different way. Did the Police Officer ask you, if the person that robbed was [sic] one of the photographs?

> A Uh ... uh.
>
> Q And were you able to recognize one of the photographs?
>
> A Yes. I remembered when it happened I remember, I could recognize one of them.
>
> Q Okay, and at the time, I'm sorry, and when you looked at the photograph you were sure that that was the right person that robbed you?
>
> A Yes.
>
> Q Okay, and you told the Police Officer that that was the person who robbed you?
>
> A Yes.
>
> Q Okay, do you see any of the persons who robbed you in the courtroom today?
>
> A That man right there look similar, but not real sure, long hair like this ... like all them look like [sic], you know, long hair, look alike.
>
> Q Okay, the time you looked at the photographs was a short time after the robbery was that right?
>
> A Yes.
>
> Q Okay and you said you were sure when you looked at the photograph, right?
>
> A Uh ... uh.
>
> [STATE]: Your honor, could the record reflect that the witnesses [sic] indicated the defendant, Mr. Baxter.
>
> COURT: Yes.
>
> [DEFENSE COUNSEL]: Your honor, At this point in clarification could the record reflect also reflect that is

2. From the context of the questioning, one can only assume that this response indicates agreement. We reiterate the importance of requiring witnesses to respond to questions with either "yes" or "no" for purposes of establishing an accurate and unambiguous record on appeal.

the only black male in jail guard [sic] in the courtroom?

COURT: Yes, sir.

Tr. at 30–31.

On cross-examination of Tran, the following exchanges occurred:

Q Now, how do you know, Mr. Baxter, this gentleman right here, is the one who struck you? Did you see him strike you?

A Like I tell, I can't very recognize him, I recognize him like a long time ago when, but like on the {.... indiscernible ....} when the cop get me to recognize him, like I recognize the guy who sit on me and then hit me.

Q Okay, and are you sure that is Mr. Baxter?

A I told you I got no idea because long time ... I really don't remember.

Id. at 35.

Q Was it possible, Mr. TRAN, that you recognize Mr. Baxter as being in the house, but that he's not actually the one who did anything to you. Who didn't beat you up or take any money or anything like that or take any property from you?

A If he the one I {.... indiscernible ....} I ... he the one who hit me because three of them hit me and then two of them drag me on the floor.

Q So, now you are sure that it was Mr. Baxter.

A Like I told you, if he the one I think that on the picture that the cops look at me before, he the one who hit me.

Q Okay, so you are saying, I picked him out, but you don't remember as you are sitting here today whether or not he did anything to you or not? Is that right?

A Uh ... uh.

Q Okay, now when the Officer showed you these photographs and asked you if you recognized, ... I believe [the State] asked you whether the Officer said, did you recognize any of the people, is that exactly what he said?

A Yeah, uh ... uh.

Q Okay, did he say do you recognize anybody who actually robbed you or was he just asking you if you recognize any of the people who were in the house?

A Like when the cop gave me the recent photo of them like {.... indiscernible ....} so I can remember who, but now it's like long time already so,

Q My question to you though is, did the Police Officer ask you to tell you what ... to identify the person, to tell him what they did, or is this whether or not to identify them?

A Like they give me like six picture, they want me to pick out one of them, who the one like rob me, so I pick one.

Q In your mind, everybody there, is it fair to say, the way you believe, that everybody who was there robbed you, right?

A Right.

Q Is that what you think?

A Uh ... uh.

Id. at 37–38.

On redirect, the State asked Tran whether one of the men who allegedly robbed him wore a necklace. Tran replied, "You know I remember silver necklace. Like big silver necklace, like I remember." Id. at 40. On recross, Tran testified that only one of the men wore such a necklace. When asked whether he remembered if Baxter wore the necklace, Tran responded, "Like I told you long time ago don't remember." Id. at 41.

After Tran was excused, the State offered into evidence "State's Exhibit I, which is the Probable Cause Affidavit regarding the robbery in which [sic] an Officer Roderick Wallace prepared in association with the robbery case." *Id.* Baxter objected as follows:

[DEFENSE COUNSEL]: Your honor, I move to object to that, number one it's hearsay, Mr. Wallace is not here and subject to cross-examination as to his interpretations or any of that information. While this is Probation Violation and hearsay is admissible in some ... certain situations those are used to establish a foundation or liability. I know absolutely nothing about Mr. Wallace other than the fact that he signed off on this affidavit. There is no other quali-fy[ing] foundation that has been laid. He's been subpoenaed at least twice which he failed to appear both times to my understanding.[3] I object to it, it's hearsay and it's not reliable.

COURT: [State]?

STATE: Judge, I would submit to the Court that it is ah ... reliable hearsay. It's a document that was prepared during the course of the investigation. It is signed by Roderick Wallace. The signature reports that ah ... Mr. Wallace is a law enforcement officer. He is also identified on the document as the arresting officer and the ah ... the document itself obviously establishes that ah ... it's a robbery. It is obviously hearsay. It contains other hearsay and I don't believe that the rules of evidence with respect to hearsay applies [sic] to probation violation hearing [sic], but it does meet the basic { .... indiscernible .... }

of reliability that is required here, and I submit that this is an admissible document for purposes of this hearing.

[DEFENSE COUNSEL]: Your honor, before you rule may I just make ... establish a little more record. With respect to this affidavit, [the State] brings out a good point. Number one, it does contains [sic] multiple hearsay. I believe, it also contains hearsay that is beyond what Mr. TRAN, who just testified would have been subject to cross-examination here today. I believe it allegedly has statements from his brother, who I don't know have [sic] a good enough grasp of the English language for us to be able to cross-examine or talk to us here today, plus my other besides the fact that it's unreliable hearsay that's that not has been established uh ... the fact is that Mr. Baxter, even though not having only due process { .... indiscernible .... } to the probation violation, does have the right to examine all witnesses and the right of confrontation would be jeopardized if this were allowed in, especially in light of Mr. Wallace's failure, intentional failure to appear.

[STATE]: One last record I would like to make, Judge. Each page of this document it appears to be exhibited in five parts, I guess I should say that for the record, each page carries the same affirmation that I swear or affirm under the penalties for perjury that the above facts are true to the best of my knowledge and the belief that I learned these facts from another law enforcement officer and the Mr. Wallace has signed each page.

---

3. The chronological case summary indicates that subpoenas were issued to Officer Wallace on December 10, 2001, and December 18, 2001. The record is silent as to Officer Wallace's reasons for ignoring these subpoenas. Given Tran's limited English-speaking skills and difficulty in recalling the events sur-

rounding the alleged robbery, compounded by the ordeal of confronting one of his alleged assailants in a courtroom setting, it is difficult to overestimate the impact of Officer Wallace's absence on the State's ability to carry its burden of proof.

COURT: The objection is overruled. Admitted over defense objection.

*Id.* at 41–43.

At the conclusion of the hearing, the trial court found by a preponderance of the evidence that Baxter had violated his probation by "participat[ing] in or perpetrat[ing] a Robbery." *Id.* at 48. The trial court further stated, "[Baxter] didn't behave well in society and he is in arrears on his fees of several hundred dollars and the Court revokes his release and orders him incarcerated in the Department of Corrections[.]" *Id.* In its order on violation of in-home detention, the trial court found that Baxter "violated the conditions of in-home detention, by preponderance of the evidence in that he participated [in] and/or perpetrated a robbery; failed to behave well in society; [and] failed to pay in-home fees." Appellant's App. at 10.

Baxter now appeals.

## Discussion and Decision

### I. *Admissibility of Document*

Baxter contends that State's Exhibit I constitutes unreliable hearsay and that the trial court erred in admitting the document into evidence at the probation revocation hearing. The lion's share of Baxter's lengthy argument is devoted to the alleged infringement of his due process right to confront and cross-examine witnesses. We need not respond to Baxter's constitutional argument in great detail, however, because we conclude that the question may be decided by applying existing precedent to the facts of the instant case.

In *Cox v. State*, 706 N.E.2d 547 (Ind. 1999), our supreme court reiterated the well-settled principle that "probationers are not entitled to the full array of constitutional rights afforded defendants at trial," but noted that a probationer at a revocation hearing is nevertheless entitled to certain due process rights, such as the right to confront and cross-examine witnesses. *Id.* at 549; *see also* Ind.Code § 35–38–2–3(e) (providing that a probationer "is entitled to confrontation, cross-examination, and representation by counsel"). The *Cox* court further noted that a probation revocation hearing "is not to be equated with an adversarial criminal proceeding. Rather, it is a narrow inquiry, and its procedures are to be more flexible. This is necessary to permit the court to exercise its inherent power to enforce obedience to its lawful orders." *Cox*, 706 N.E.2d at 550 (citations omitted). The *Cox* court observed that the Indiana Rules of Evidence, other than those with respect to privileges, do not apply in probation proceedings, *see* Ind. Evidence Rule 101(c), and held that the rule against hearsay and its attendant definitions and exceptions "do not apply in proceedings relating to sentencing, probation, or parole." *Cox*, 706 N.E.2d at 550 (footnote omitted). Additionally, the *Cox* court held that in probation revocation hearings,

> judges may consider any relevant evidence *bearing some substantial indicia of reliability.* This includes *reliable hearsay.* Judges are not, of course, bound to admit all evidence presented to the court. In fact, the absence of strict evidentiary rules places particular importance on the fact-finding role of judges in assessing the weight, sufficiency and reliability of proffered evidence. This assessment, then, carries with it a special level of judicial responsibility and is subject to appellate review. Nevertheless, it is not subject to the Rules of Evidence (nor to the common law rules of evidence in effect prior to the Rules of Evidence).

*Id.* (emphases added; footnote omitted).

In *Pitman v. State*, 749 N.E.2d 557 (Ind. Ct.App.2001), *trans. denied*, the State introduced "certified copies of the court docket, police report, and charging infor-

mation" to establish that the defendant had violated the terms of her probation by being charged with battery and consuming alcohol. *Id.* at 559. The *Pitman* court determined that "[t]he State's use of certified copies of the [documents] regarding Pitman's new charge and intoxication [was] sufficient to support the revocation of Pitman's probation. The information is obviously relevant and certification of the documents by the court provides substantial indicia of their reliability." *Id.*

■ The so-called probable cause affidavit in the instant case, however, is actually entitled "Law Enforcement Incident Report" and is uncertified, unverified, and—contrary to the State's representation at the revocation hearing—unsigned by either the arresting officer (Roderick Wallace) or the "author" of the report (listed as Virgil Cook).[4] *See* Appellant's App. at 12–16. The State contends that the report contains substantial indicia of reliability in that it was prepared by a law enforcement officer during the course of his official investigation and corroborates Tran's testimony at the revocation hearing. We disagree.

While recognizing that the rules of evidence do not apply in probation revocation proceedings, we nevertheless observe that "investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case" do not fall within the public records exception to the hearsay rule, an indication that such reports are not considered inherently reliable. Ind. Evidence Rule 803(8); *cf. Hernandez v. State,* 716 N.E.2d 601, 602–03 (Ind.Ct.App.1999) (noting that substantial indicia of reliability of hearsay evidence in criminal proceeding "may be inferred where the evidence falls within a firmly rooted exception to the hearsay rule"; "Such exceptions to the hearsay rule exist because the manner in which certain out-of-court statements are made virtually guarantee their reliability."). As for the State's contention that the incident report corroborates Tran's testimony, the substance of Tran's testimony is that a man who might have looked "similar" to Baxter was among five men who allegedly robbed him in May 2001 and that he identified the perpetrator in a photo lineup

4. In its appellate brief, the State fails to acknowledge that the incident report is unverified. *See* Appellee's Br. at 6–7 ("The State also argued [at the revocation hearing] that the document contained an oath and affirmation from Detective Wallace about the contents of the document."). We remind the State of its duty of candor toward the tribunal under Indiana Rule of Professional Conduct 3.3.

Assuming that Officer Cook was in fact the author of the incident report, it is often difficult to determine the extent to which his account of the events surrounding the alleged robbery was based on personal knowledge. *See, e.g.,* Appellant's App. at 15 ("Detective Wallace along with Officer Cook knocked on the door of this residence and a black female later identified as Bernetta Lofton answered the door. I identified myself as a police officer and explained to Mrs. Lofton why we were there and asked if she had any young

sons at which time she stated yes she did. She had a son named Lamonte Baxter, black male, 21. I asked if it was okay if I spoke with her son, which time she said yes. Detective Wallace spoke to Mr. Lamonte Baxter, DOB 3/16/80. Baxter said he was unaware of what I was talking about. I asked Mr. Baxter if he would mind stepping outside so someone could take a look at him, at which time Baxter said he didn't mind and came outside. Once he was standing outside, Detective Wallace went to Mr. Tien Tran who was seated in my police car and at which time Tien Tran positively identified Lamonte Baxter as one of the black males who participated in the beating and robbed him inside of 1825 North Belleview Pl.") (typography altered). It appears that the incident report was "printed by" Officer Wallace on May 22, 2001, and was transmitted via fax from the Marion County Prosecutor's Office on November 27, 2001. *See id.* at 12.

shortly after the alleged robbery. Tran did not specifically testify that he ever identified Baxter as one of the men who allegedly robbed him. In sum, we conclude that the incident report bears no substantial indicia of reliability and that the trial court therefore erred in admitting it into evidence at the revocation hearing.

### II. Sufficiency of Evidence

 Baxter argues that the competent evidence was insufficient to sustain the trial court's revocation of his probation.

A probation revocation hearing is in the nature of a civil proceeding. As such, the alleged violation need be proven only by a preponderance of the evidence. Moreover, violation of a single condition of probation is sufficient to revoke probation. As with other sufficiency questions, we do not reweigh the evidence or judge the credibility of witnesses when reviewing a probation revocation. We look only to the evidence that supports the judgment and any reasonable inferences flowing therefrom. If there is substantial evidence of probative value to support the trial court's decision that the probationer committed any violation, revocation of probation is appropriate.
*Pitman,* 749 N.E.2d at 559 (citations omitted).

 Absent the erroneously admitted incident report, the State presented no evidence of probative value to support the trial court's decision that Baxter violated his probation by participating in a robbery and failing to behave well in society. At the revocation hearing, Tran failed to identify Baxter as a participant in the alleged robbery and failed even to identify the location at which the robbery took place,

thereby rendering meaningless Baxter's stipulation that he was on in-home detention on the date of the robbery. Given this lack of proof, we conclude that the trial court erred in revoking Baxter's probation on the aforementioned grounds.

As for the trial court's revocation of Baxter's probation for failure to pay in-home detention fees, Indiana Code Section 35–38–2–3(f) provides that "[p]robation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay." Here, the State failed to offer any evidence that Baxter recklessly, knowingly, or intentionally failed to pay in-home detention fees.[5] We therefore conclude that the trial court erred in revoking Baxter's probation on this ground. *See Johnson v. State,* 692 N.E.2d 485, 488 (Ind.Ct.App.1998).

Reversed.

KIRSCH and DARDEN, JJ., concur.

---

5. Because we conclude that the State failed to meet its burden of proof, we do not address Baxter's argument that he "was not fairly put on notice that the State would seek revocation based upon the existence of an arrearage in

the payment of the in-home detention fees, nor was [he] fairly put on notice that the trial court would rely upon such findings in its revocation order." Appellant's Br. at 22.