792 N.E.2d 85 (2003)
J.J.C., Appellant-Defendant,
v.
STATE of Indiana, Appellee.
No. 49A02-0212-JV-1045.
Court of Appeals of Indiana.
July 29, 2003.
*86 Janice L. Stevens, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
SULLIVAN, Judge.
J.J.C. appeals from the juvenile court's findings that he violated the conditions of his probation. He presents two issues for our review: (1) whether the trial court properly admitted evidence from an electronic monitoring system, and (2) whether the evidence was sufficient to support a finding of the violations.
We reverse.
J.J.C., born on September 25, 1988, committed a series of delinquent acts over a period of several months, beginning in January 2002. The first act, which J.J.C. admitted, was disorderly conduct arising from fighting on a school bus. The subsequent acts were all violations of the conditions of his probation. Following the second violation of probation, J.J.C. was placed on intensive probation, which included home detention and electronic surveillance.
After J.J.C. had begun the intensive probation program, he was alleged to have committed four violations of the rules of home detention. The first allegation was that J.J.C. failed to leave his home as permitted on Sunday, August 25, at 10:00 a.m. Specifically, the probation officer, Tonia Kelly, alleged that J.J.C. left 1 hour and 30 minutes late, that he returned home for one minute in the afternoon, and arrived back home 2 hours and 19 minutes earlier than scheduled that evening. The second allegation was that J.J.C. left the range of his monitor for 24 minutes on September 7 during a time when he was not authorized to be away from home. The probation officer also alleged that on September 8, the home detention monitor could not be contacted by the main computer system because someone would not relinquish the phone line. Finally, the last allegation filed against J.J.C. alleged that he was out of the range of his monitor from 9:06 p.m. to 9:21 p.m. on September 11, a time he was not authorized to be away from home. Following a hearing conducted on November 7, the juvenile court made a true finding of the allegations. *87 The juvenile court subsequently ordered J.J.C. to be detained in a correctional facility for children under the wardship of the Department of Correction for a period of 6 months.
J.J.C. first contends that the juvenile court erred in allowing into evidence printouts of the daily activity reports from J.J.C.'s electronic surveillance monitor. At the probation revocation hearing, J.J.C. made various objections to the admission of the printouts, mostly in regard to the system's general reliability. However, he also asserted that the State had not presented any information about whether the equipment used to monitor J.J.C. had been checked or calibrated.
This concern regarding the calibration of the monitor was well-founded, as Ms. Kelly later testified that J.J.C. moved to a new home during the time he was serving home detention. She also acknowledged that she did not know whether the probation officer who set the monitor up at the second residence had done so properly or whether that individual had checked to make sure that the monitor would not show that J.J.C. was out of range even when he was inside the home. As was testified to by both Ms. Kelly and Martin Ramey, a probation officer, if the appropriate range was not set on the monitor, it could give false results. The information which was filed indicates that the alleged violations which occurred in September were at the new residence. The State did not present any witnesses or information stating that the range on the system had been set properly or that the monitor had been checked to make sure that it would not show J.J.C. being away from home while he was inside the residence.
In Cox v. State, 706 N.E.2d 547 (Ind.1999), our Supreme Court established the standard to be used for the admission of evidence in a probation revocation proceeding. Judges may consider any relevant evidence bearing some substantial indicia of reliability. Id. at 551. In considering the admission of evidence in a probation revocation proceeding, the absence of strict evidentiary rules places particular importance upon the fact-finding role of judges in assessing the weight, sufficiency, and reliability of proffered evidence. Id. This assessment carries with it a special level of judicial responsibility and is subject to appellate review. Id.
J.J.C. asserts that the State failed to establish that any particular procedures were followed in setting up the monitor in the new residence, that the system used is generally reliable, or that the particular equipment used to monitor him was functioning properly. In addition, he points to testimony from his mother which indicates that she reported what she perceived to be malfunctions of the monitor to Mr. Ramey. Further, J.J.C. relies upon testimony from Mr. Ramey in which he acknowledged that the monitors may malfunction and that he had received reports from J.J.C.'s mother that they were having problems with the monitor.
Without reflecting upon the general reliability of the equipment used to monitor individuals on home detention, we do question whether the State did an adequate job of establishing the reliability of the equipment used to monitor J.J.C. The testimony from Ms. Kelly discussing the set-up procedure was very basic and incomplete. In addition, Ms. Kelly had significant difficulty in explaining how the equipment worked and how the various parts of the system communicated to each other. While some of the confusion inherent in the testimony existed because of the manner in which Ms. Kelly was being questioned and the wording of the questions asked of her, the information given was inadequate to instill confidence that the *88 system used here was functioning properly. However, the fact most important to our review of whether the printouts should have been admitted into evidence is Ms. Kelly's testimony that she had no knowledge of whether the monitor was checked when it was set up in the new residence for J.J.C. and his family. Without any indication that the system was set up correctly, and given that the printouts show J.J.C. being out of range of the monitor several times after moving when he was not authorized to be away from home, but having no such violations at the old residence, the evidence does not bear a substantial indicia of reliability. Therefore, State's Exhibits 4 and 6, upon which the State based its second and fourth allegations that J.J.C. was out of the range of his monitor on September 7 and 11, should not have been admitted into evidence.[1] Without these two exhibits, there was no evidence that J.J.C. committed probation violations by being outside of his home on the given days. The juvenile court erred in finding that J.J.C. violated his probation on September 7 and 11.
State's Exhibit 5, which was also a printout for the period of time after which J.J.C. had moved, was not relied upon by the State to show that J.J.C. was out of range of his monitor at any time. Therefore, we are not faced with the same questions about its reliability as we were with State's Exhibits 4 and 6. However, as with State's Exhibit 3, which was the printout upon which the State relied in asserting that J.J.C. violated his probation in August, there still is the concern that the juvenile court should not have admitted the evidence because it is questionable whether the State established that the system used to monitor J.J.C. is reliable. Nonetheless, these shortcomings aside, we need not decide whether State's Exhibits 3 and 5 constitute evidence bearing some substantial indicia of reliability. Assuming that the printouts were properly admitted, they are insufficient to support a finding that J.J.C. violated the conditions of his probation.
Because a probation revocation proceeding is in the nature of a civil proceeding, the alleged violation need be proved only by a preponderance of the evidence. Baxter v. State, 774 N.E.2d 1037, 1044 (Ind.Ct.App.2002), trans. denied. Violation of a single condition of probation is sufficient to revoke probation. Id. As with other sufficiency issues, we do not reweigh the evidence or judge the credibility of witnesses. Id. We look only to the evidence which supports the judgment and any reasonable inferences flowing therefrom. Id. If there is substantial evidence of probative value to support the trial court's decision that the probationer committed any violation, revocation of probation is appropriate. Id.
With the first home detention violation filed against J.J.C., that he left home late and arrived home early on Sunday, August 25, we begin by noting our puzzlement that someone would violate a home detention *89 order by leaving home at a time later than they were authorized to leave and by arriving home at a time earlier than they were required to be home.
The record would appear to indicate that J.J.C. was authorized to be absent from the home on Sundays between the hours of 10:00 a.m. and 7:00 p.m. to attend church. The record does not reflect that terms of intensive probation required J.J.C. to be absent during those hours on Sunday.
Although the juvenile probation officer who testified opined that "he must leave at 10:00 in the morning, and be home by 7:00 that evening," we perceive no basis for that conclusion. Tr. at 54 (emphasis supplied). We therefore fail to discern how leaving home later than the authorized time and returning earlier than the time his absence was permitted could constitute a valid basis for revocation of his probation.[2]
Based upon the other schedule entries before us, the only reasonable inference is that J.J.C. was not required to be away from home on August 25 for nine hours, but that he was authorized to leave during that time for the purpose of attending church. The evidence does not establish that J.J.C. violated the conditions of his probation by leaving the house at a time later than that authorized and returning at a time earlier than scheduled. The juvenile court erred in finding that the late departure from home and early arrival constituted a probation violation.
The other violation alleged by the State is that the monitor could not be contacted by the main computer system after three tries during the early morning hours of Sunday, September 8. As listed on the printout, this is recorded as "Line Tied up." Exhibits at 9. No explanation was ever given as to what could cause this message to occur or why it results in a violation of probation. Without some explanation of how such message indicated that a violation had occurred, the State has failed to present any evidence of a violation. The juvenile court erred in finding that J.J.C. violated his probation for this reason.
The judgment of the juvenile court is reversed. The juvenile court is ordered to take such action as is necessary to correct J.J.C's juvenile record and to conduct any further proceedings which are not inconsistent with this opinion.
BAKER and DARDEN, JJ., concur.
NOTES
[1] Were we to hold that the evidence was properly admitted, State's Exhibit 4 would still have not supported a probation violation. The second alleged violation is that J.J.C. was away from his home from 6:34 p.m. until 6:58 p.m. on Saturday, September 7. The notice of probation violation alleges that J.J.C. was not authorized to be away from his home at that time. However, the printout which was submitted as evidence states, "[n]o schedule was found for this period." Exhibits at 8. No testimony was provided indicating that the schedule information was in error on that date or that J.J.C. was indeed not authorized to leave home. Because the evidence does not establish that J.J.C. was not authorized to be away from home, the State has failed to prove by a preponderance of the evidence that J.J.C. violated the conditions of his probation as to these allegations.
[2] In the context of an individual attending school or other court required appointments, it makes sense that the schedule would say that a child "must" leave because he is required to attend those functions and, therefore, must be out of the house. However, the reasonable inference deduced from reviewing the printouts is that extra time is built into the schedule so that the child does not have to leave at exactly a certain time and use a set number of minutes in order to not be in violation of the daily schedule.