Michael L. BUSSBERG, II,
Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 70A04–0406–CR–316.

Court of Appeals of Indiana.

May 3, 2005.

Rehearing Denied June 22, 2005.

Transfer Denied Aug. 25, 2005.

Thomas M. Dattilo, Kevin C. Lewis, Dattilo Law Office, Madison, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge.

Michael L. Bussberg, II, appeals the revocation of his probation. He presents three issues for our review:

I.   Whether his Fifth Amendment right against self-incrimination was violated;

II.  Whether the State established the chain of custody of a urine specimen; and

III. Whether the trial court properly ordered him to serve the entire previously suspended sentence.

We affirm.

In 1998 Bussberg pleaded guilty to Dealing in a Narcotic Drug as a Class B felony, and the trial court sentenced him to ten years imprisonment with six years suspended to be served on probation. As conditions of his probation, Bussberg was to refrain from the use of "drugs (controlled substances)" and was subject to urinalysis drug testing as ordered by his probation officer. Amended Appendix at 135.

On January 26, 2004, Bussberg was required to submit a urine specimen for drug testing. The test was positive for the presence of methamphetamine, so the State filed a petition seeking to revoke probation. Following a hearing, the trial court determined that Bussberg had violated his probation and ordered that the

remainder of his suspended sentence be executed.[1]

## I

### *Self-incrimination*

During the hearing, Bussberg was questioned as to whether he had ingested methamphetamine prior to submitting a urine specimen. His counsel objected upon the ground that he would incriminate himself with an answer. The prosecutor then requested use immunity for Bussberg so that no additional criminal charges could be filed against him should he admit to use. The court acknowledged the request and explained to Bussberg that he would not face additional charges by answering the question. Bussberg's counsel continued to object and a discussion was held off-the-record. After the completion of the discussion, the trial court overruled the objection, and Bussberg answered that he had ingested methamphetamine prior to giving the urine specimen.

Bussberg claims that his Fifth Amendment right against self-incrimination was violated, in addition to claiming that the court failed to follow the mandates of Indiana Code § 35–37–3–3 (Burns Code Ed. Repl.1998) when granting use-immunity. The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." Bussberg claims that because his probation could be revoked because of his forced admission, he was subject to criminal sanctions.

A probation revocation is in the nature of a civil action because there is no formal finding of guilt or innocence and the alleged violation need be proven only by a preponderance of the evidence. *State v. Cass,* 635 N.E.2d 225, 226 (Ind.Ct.App.

1994), *trans. denied.* Consequently, a probationer is not entitled to the full array of rights afforded at trial. *Id.* However, it has long been held that the privilege against self-incrimination not only applies to a defendant at a criminal trial but also to a person in any other proceedings, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *Id.*

In *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), the United States Supreme Court addressed the Fifth Amendment right against self-incrimination. In that case, the majority discussed the application of the Fifth Amendment to probationers. It stated:

"The threat of punishment for reliance on the privilege distinguishes cases of this sort from the ordinary case in which a witness is merely required to appear and give testimony. A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a

---

1. Because Bussberg had already served thirty days executed for a prior probation violation, he was ordered to serve five years and eleven months.

criminal prosecution." *Id.* at 435, 104 S.Ct. 1136.

From this language, it is obvious that a probationer has some limited Fifth Amendment right against self-incrimination. The extent of that right was discussed more deeply by the Supreme Court in a footnote, which reads:

"The situation would be different if the questions put to a probationer were relevant to his probationary status and posed no realistic threat of incrimination in a separate criminal proceeding. If, for example, a residential restriction were imposed as a condition of probation, it would appear unlikely that a violation of that condition would be a criminal act. Hence, a claim of the Fifth Amendment privilege in response to questions relating to a residential condition could not validly rest on the ground that the answer might be used to incriminate if the probationer was tried for another crime. Neither, in our view, would the privilege be available on the ground that answering such questions might reveal a violation of the residential requirements and result in the termination of probation. Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer. It follows that whether or not the answer to a question about a residential requirement is compelled by the threat of revocation, there can be no valid claim of the privilege on the ground that the information sought can be used in revocation proceedings.

Our cases indicate, moreover, that a state may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination. Under such circumstances, a probationer's 'right to immunity as a result of his compelled testimony would not be at stake.' ..." *Id.* at n. 7 (citations omitted).

We glean two important facts from these words of the United States Supreme Court. The first is that a probation revocation proceeding is not criminal in nature;[2] thus, a probationer may not successfully assert his Fifth Amendment right against self-incrimination for the purpose of defending against an alleged probation violation. The second is that a probationer may be forced to provide incriminating information only if the State recognizes that it may not use the required answers in a later criminal proceeding.

The question which the State asked in this case sought incriminating evidence against Collins which would establish a probation violation and could potentially be the basis for further criminal charges. Recognizing the restriction upon the use of the incriminating evidence, the prosecutor requested use-immunity through the application of I.C. § 35-37-3-3. The trial court granted the request. Consequently, the incriminating information was to be used solely for the purpose of probation revocation and not for any criminal proceeding. Therefore the trial court did not err in ordering Bussberg to answer the question as to whether he had ingested methamphetamine.[3]

**2.** This is well established as a legal principle even though revocation of probation results in

a more severe limitation upon the probationer's liberty and freedom of movement.

**3.** Bussberg also directs our attention to the

Bussberg's claim with regard to the interpretation of I.C. § 35–37–3–3 also fails because the immunity statute states that any evidence which the witness gives "may not be used in any criminal proceeding against that witness." As previously stated, a probation revocation hearing is not a criminal proceeding. Thus, use-immunity would not shield Bussberg from being required to answer questions posed to him and having that evidence used against him in the probation revocation proceeding. Consequently, the reliance at the probation revocation hearing upon the admission of drug use does not violate Bussberg's right against self-incrimination.

## II

### Chain of Custody

Bussberg claims that the trial court erred with respect to the admission of the results of the drug screen. Specifically, Bussberg claims that the State did not establish the chain of custody of the urine specimen which he had submitted. Because he did not object at the probation revocation hearing, Bussberg asserts that the admission of the evidence was fundamental error. Fundamental error is error such that if not rectified, a denial of due process would result. *Brabandt v. State,* 797 N.E.2d 855, 861 (Ind.Ct.App.2003).

"The State bears a higher burden to establish the chain of custody of 'fungible' evidence, such as blood and hair samples, whose appearance is indistinguishable to the naked eye." *Troxell v. State,* 778 N.E.2d 811, 814 (Ind.2002). The State must give reasonable assurances that the evidence remained in an undis-

turbed condition to establish a proper chain of custody. *Id.* It is not necessary for the State to establish a perfect chain of custody, and once the State strongly suggests the exact whereabouts of the evidence, any gaps go to the weight of the evidence and not its admissibility. *Id.* Furthermore, there is a presumption of regularity in the handling of evidence by officers, and there is a presumption that officers exercise due care in handling their duties. *Id.* One must present evidence that does more than raise a mere possibility that the evidence may have been tampered with to mount a successful challenge to the chain of custody. *Id.*

In a probation revocation proceeding, judges may consider any relevant evidence bearing some substantial indicia of reliability. *J.J.C. v. State,* 792 N.E.2d 85, 87 (Ind.Ct.App.2003). The absence of strict evidentiary rules in a probation revocation proceeding places particular importance upon the fact-finding role of judges in assessing the weight, sufficiency, and reliability of proffered evidence. *Id.* This assessment carries with it a special level of judicial responsibility and is subject to appellate review. *Id.*

While the courier who transported the specimen was not brought into the court to testify, we are confident that the State established a sufficient chain of custody to support the trial court's reliance upon it as evidence of Bussberg's drug use in violation of his probation. The testimony revealed that Probation Officer Mark Fields observed the collection of the urine specimen from Bussberg on January 26, 2004. The specimen was sealed and placed in a locked box in a refrigerator, along with a

---

fact that he could not state with specificity at the probation revocation hearing whether he was on probation at the time of the alleged violation. He has not directed us to any evidence which would indicate that he was

not on probation at the relevant time. Furthermore, he admitted that he assumed that he was and that he was reporting to his probation officer at the time.

chain of custody form. Fields testified that the normal procedure is for a courier from Witham Laboratories to come to the office on a Tuesday morning and retrieve the specimens. The courier then signs the chain of custody form, gives one copy to Probation Officer Fields, and takes the specimen to the lab. In this case, rather then sign the form, the courier initialed it with what appears to be the letter "M" and dated the form "2/3/04." State's Exhibit A.

Jeffrey Retz, Scientific Director at Witham Laboratories, testified that Mel Grizzel, one of the Laboratories' couriers, retrieved the urine specimen on February 3rd and brought it to Retz. Retz noted that he inspected the specimen for signs of tampering and found none. Given the totality of the evidence discussing the handling and condition of the urine specimen, Bussberg was not denied due process through the admission of the evidence.

### III

*Imposition of Entire Sentence*

Bussberg's final claim is that the trial court erred by reimposing the entire unserved suspended portion of his sentence upon finding that he had violated his probation. Bussberg opines that it is possible that the trial court was under the mistaken belief that it was required to reimpose the entire suspended sentence and that it should have stated why it imposed the entire suspended sentence rather than modified probation. In making this argument, Bussberg directs our attention to two decisions from this court, *Pugh v. State*, 804 N.E.2d 202 (Ind.Ct.App.2004) and *Stephens v. State*, 801 N.E.2d 1288 (Ind.Ct.App.2004). He acknowledges that transfer was granted in those cases. In his reply brief, Bussberg admits that the Supreme Court's decision in *Stephens v. State*, 818 N.E.2d 936 (Ind.2004), does not

answer the question he presents and states that the decision in *Pugh v. State*, 819 N.E.2d 375 (Ind.2004), sheds light upon whether the action of the trial court was appropriate in this case.

The question to be decided in *Stephens* and *Pugh* was whether a trial court could properly order that a probationer serve less than the entire suspended portion of a sentence upon the finding of a probation violation. The Supreme Court in *Stephens* held that "a trial court has the statutory authority to order executed time following revocation of probation that is less than the length of the sentence originally suspended, so long as, when combined with the executed time previously ordered, the total sentence is not less than the statutory minimum." 818 N.E.2d at 942. The decision in *Pugh* mirrored that holding. 819 N.E.2d at 375.

Neither *Stephens* nor *Pugh* address whether a trial court must specify why it chooses to impose the entire suspended portion of a sentence or a lesser period upon a finding of a probation violation. Additionally, there is nothing implicit within those decisions which leads us to conclude that a trial court must give reasons why it is choosing to impose the particular punishment that it does for a probation violation. More importantly, Bussberg has not cited to any authority, nor have we found any, which requires a trial court to explain the particular punishment for a probation violation.

Bussberg also asserts that the trial court made certain findings about matters which were not germane to the question of whether he had violated his probation by ingesting methamphetamine. The challenged findings dealt with matters relating to other alleged and/or proven probation violations.

In its order revoking probation, the trial court did make findings with regard to probation violations with which Bussberg had not received notice for purpose of the probation revocation hearing. Basing a probation revocation upon claimed violations for which the defendant had received no notice is error because it violates due process. *Hubbard v. State*, 683 N.E.2d 618, 622 (Ind.Ct.App.1997). However, it is harmless error in this case because Bussberg was found to have ingested methamphetamine, a violation for which he did receive notice, and proof of a single violation of the conditions of probation is sufficient to support the decision to revoke probation. *See id.*

The revocation of probation is affirmed.

BAILEY, J., and MATHIAS, J., concur.