## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 12 2017, 8:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| L.U., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner* | July 12, 2017 <br><br> Court of Appeals Case No. <br> 57A04-1610-JV-2448 <br><br> Appeal from the Noble Superior Court <br><br> The Honorable Robert E. Kirsch, Judge <br><br> Trial Court Cause Nos. <br> 57D01-1608-JD-25 <br> 57D01-1511-JD-52 <br> 57D01-1409-JD-58 |

**Baker, Judge.**

[1] L.U. was adjudicated delinquent and ordered to serve probation. While he was on probation, the State filed a new, separate petition alleging that he had committed a new offense of possession of paraphernalia.[1] The State also alleged that he had violated the terms of his probation by committing the new offense and by failing to notify his probation officer of a change in his employment. The juvenile court adjudicated him delinquent on the new cause, found that he violated his probation, and ordered him to be committed to the wardship of the Indiana Department of Correction (DOC). On appeal, L.U. argues that there was insufficient evidence to find that he possessed paraphernalia or that he had violated the terms of his probation, and that the juvenile court erred in committing him to the DOC. Finding the evidence sufficient and that the juvenile court did not err in committing L.U. to the DOC, we affirm.

## Facts

[2] On September 10, 2014, the State filed a delinquency petition against fourteen-year-old L.U. under cause number 57D01-1409-JD-58 (JD-58) alleging that L.U. committed what would be Class D felony battery resulting in bodily injury if committed by an adult. On November 19, 2014, L.U. admitted to committing the lesser adult equivalent of Class B misdemeanor disorderly

---

[1] Ind. Code § 35-48-4-8.3.

conduct. The juvenile court adjudicated L.U. to be a delinquent and placed him on probation for six months.

[3] On December 5, 2014, L.U.'s probation officer reported that L.U. had violated the terms of his probation by committing a new offense of disorderly conduct. On January 14, 2015, L.U. admitted the probation violation in exchange for the dismissal of the new offense and a sanction of an additional six months of probation. The juvenile court extended L.U.'s probation by six months for an aggregate of one year probation and ordered L.U. to serve thirty hours of community service.

[4] On November 13, 2015, the State filed a delinquency petition against L.U. under cause number 57D01-1511-JD-52 (JD-52) alleging that L.U. committed what would be Class B misdemeanor possession of marijuana if committed by an adult, Class C misdemeanor possession of paraphernalia if committed by an adult, and curfew violation. On December 2, 2015, L.U. admitted to possessing marijuana, a Class B misdemeanor if committed by an adult, and to violating his probation. The State dismissed the remaining charges.

[5] A dispositional hearing for cause numbers JD-52 and JD-58 took place on February 3, 2016. The juvenile court ordered L.U. to be detained in the Allen County Juvenile Center (ACJC) and to undergo a psychological evaluation. Following the evaluation, the doctor diagnosed L.U. with conduct disorder. A probation violation dispositional hearing took place on February 17, 2016. The juvenile court extended L.U.'s probation for a period of up to twelve months

with the first six months to be served on home detention, ordered L.U. to perform fifty hours of community service, and ordered L.U. and his mother to participate in the Family Centered Treatment Program.

[6] On August 10, 2016, Noble County Probation Officers Samantha Hammond and Robert Haywood went to L.U.'s residence to do a home contact. No one inside the home answered their initial knock, nor did anyone answer L.U.'s home detention cell phone. After Officer Hammond knocked again, L.U.'s mother answered the door and called for L.U. L.U. came downstairs; Officer Hammond explained that she wanted to talk to him. They went upstairs, which was a self-contained apartment with a kitchen, bedroom, bathroom, and landing area. Officer Hammond followed him, and as they were talking, she observed cigarette butts in his room and empty alcohol bottles in the kitchen common area. The probation officers requested assistance from the police to conduct a probation search. Kendallville Police Officer Nathaniel Stahl arrived to help search L.U.'s residence. Officer Stahl searched L.U.'s bedroom, where he found behind L.U.'s futon a glass smoking device that contained burnt residue that smelled of burnt marijuana. Officer Haywood found multiple empty packages of tobacco underneath L.U.'s bed and in between the mattresses, and he found empty beer cans in the bathroom. The officers found multiple mostly empty containers of alcohol in the upstairs common area.

[7] On August 15, 2016, the probation department filed a probation violation report in cause numbers JD-52 and JD-58. On August 16, 2016, L.U. was taken into custody by the Kendallville Police Department. On August 17,

2016, the State filed a delinquency petition against L.U. under cause number 57D01-1608-JD-25 (JD-25) alleging that L.U. committed what would be a Class C misdemeanor possession of paraphernalia if committed by an adult. Also on August 17, 2016, a detention hearing took place during which the juvenile court ordered L.U. to continue in detention at the ACJC.

[8] A combined fact finding hearing took place on September 28, 2016, for L.U.'s probation violation under cause numbers JD-58 and JD-52 and an initial hearing for cause number JD-25. L.U. testified that he had control over the room that contained the futon where Officer Stahl found the glass smoking device. The juvenile court found that L.U. had constructive possession of the glass smoking device and adjudicated him a delinquent.

[9] Sometime during his probation, L.U. had secured a job at McDonald's. During the hearing on L.U.'s probation violation, Noble County Probation Officer Paul Winebrenner testified that, during a visit with L.U., L.U. had indicated that he was employed, even though L.U. had quit his job approximately two weeks prior. L.U. testified that he did not know that his job was terminated; he also testified that his manager told him that his hours would be reduced from forty to zero hours, that this reduction constituted a change in his employment, and that he did not contact the probation department about the change in his employment. The juvenile court found that L.U. violated the terms of his probation and committed him to the wardship of the DOC. L.U. now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

[10] L.U. argues that the evidence is insufficient to support the juvenile court's finding that L.U. possessed paraphernalia as alleged in cause number JD-25 or to support the finding that L.U. violated the terms of his probation in cause numbers JD-58 and JD-52 by committing the misconduct alleged in JD-25 and by lying to his probation officer regarding his employment. He also argues that any violations were too minor to justify revocation of his probation.

## A. Delinquency Adjudication

[11] In resolving a claim that the evidence supporting an adjudication of juvenile delinquency is insufficient, we apply the standard of review that applies to all sufficiency matters. *Johnson v. State*, 719 N.E.2d 445, 448 (Ind. Ct. App. 1999). Accordingly, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or assess the credibility of witnesses, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.* We will affirm the conviction unless no reasonable trier of fact could find the elements of the offense proven beyond a reasonable doubt. *Id.* It is generally not necessary that the evidence overcomes "every reasonable hypothesis of innocence." *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[12] Here, L.U. was accused of "knowingly or intentionally possess[ing] an instrument, a device, or another object that the person intends to use for: (1) introducing into the person's body a controlled substance; (2) testing the strength, effectiveness, or purity of a controlled substance; or (3) enhancing the effect of a controlled substance." I.C. § 35-48-4-8.3(a).

[13] L.U. contends that insufficient evidence supported the juvenile court's finding that he constructively possessed paraphernalia in his bedroom because his possession of his bedroom was not exclusive. "Constructive possession will support a possession conviction if the State shows that the defendant had both the capability and the intent to maintain dominion and control over the contraband." *White v. State*, 772 N.E.2d 408, 413 (Ind. 2002). Essentially, in cases where the accused has exclusive possession of the premises on which the contraband is found, an inference is permitted that he knew of the presence of contraband and was capable of controlling it. *Atwood v. State*, 905 N.E.2d 479, 484 (Ind. Ct. App. 2009). When possession of the premises is non-exclusive, the inference is not permitted absent some additional circumstances indicating knowledge of the presence of the contraband and the ability to control it. *Id.* Among the circumstances which will support such an inference are: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband in plain view; and (6) location of the contraband in close proximity to items owned by the defendant. *Id.* at 484-85.

L.U. testified that his room was located upstairs; that items in his room, including a television and a gaming device, belonged to him; and that he had control over the room. Officer Stahl testified that he found a glass smoking device behind the futon that was located inside L.U.'s bedroom and that the device contained burnt residue and smelled of burnt marijuana. Even assuming for argument's sake that L.U. did not have exclusive possession of his bedroom, L.U. had close proximity to the glass smoking device, and it was located in close proximity to items that he owned. The evidence is sufficient to support the inference that L.U. knew about the presence of the paraphernalia, had the ability to control it, and constructively possessed it. *See, e.g., Allen v. State*, 798 N.E.2d 490, 502 (Ind. Ct. App. 2003) (noting that the evidence used to establish possession was found in close proximity to items owned by the defendant, giving rise to the inference that the defendant intended to maintain dominion and control over the evidence).

## B. Probation Violation

Next, L.U. argues that L.U.'s alleged untruthfulness to his probation officer was insufficient to support the juvenile court's finding that he violated the terms of his probation in cause numbers JD-52 and JD-58. Because a probation revocation proceeding is in the nature of a civil proceeding, the alleged violation need be proved only by a preponderance of the evidence. *Baxter v. State*, 774 N.E.2d 1037, 1044 (Ind. Ct. App. 2002). Violation of a single condition of probation is sufficient to revoke probation. *Id.* As with other sufficiency issues, we do not reweigh the evidence or judge the credibility of

witnesses. *Id.* We look only to the evidence which supports the judgment and any reasonable inferences flowing therefrom. *Id.* If there is substantial evidence of probative value to support the trial court's decision that the probationer committed any violation, revocation of probation is appropriate. *Id.*

Rule nine of L.U.'s probation required L.U. to notify his probation officer within twenty-four hours of any change in his employment. L.U. admitted that McDonald's reduced his working hours from forty to zero, that this reduction constituted a change in his employment about which he was required to inform his probation officer within the specified time period, and that he did not notify his probation officer about it. L.U. therefore violated a term of his probation, and because a violation of a single condition of probation is sufficient to revoke probation, the juvenile court did not err in revoking his probation.[2]

## II. Disposition

L.U. argues that the juvenile court erred by ordering him to be committed to the DOC rather than placed in a less restrictive setting.

Indiana Code section 31-37-18-6 provides that, if consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:

---

[2] Even if we had found that L.U.'s deception regarding his employment status was insufficient in some way, the fact that he committed a new offense, alone, is a sufficient basis to revoke probation.

(1) is:

      (A) in the least restrictive (most family like) and most appropriate setting available; and

      (B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[19] The choice of a specific disposition for a delinquent child is within the discretion of the trial court, subject to the statutory considerations of the welfare of the child, the safety of the community, and a statutory policy of favoring the least harsh disposition. *J.J. v. State*, 925 N.E.2d 796, 801 (Ind. Ct. App. 2010). We may reverse the juvenile court's disposition order only if the juvenile court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* The juvenile court serves to rehabilitate, rather than punish. *Id.*

[20] Here, L.U. argues that his placement with the DOC was erroneous because the nature of his misconduct was relatively minor, and aside from the finding of his

disorderly conduct, his misconduct consisted of non-violent offenses that caused no appreciable harm to anyone but L.U. He argues that he was only recently diagnosed with conduct disorder and that additional time for therapy while on home detention could yield positive results for him.

[21] Although we sympathize with L.U.'s argument, we place great weight on the juvenile court's conclusion that alternative means for rehabilitation were exhausted. The juvenile court found that L.U. "has frankly no or very limited supervision at home and we have tried every dispositional alternative that is pretty much available to the juvenile justice system at this point in time. . . . I think that we have tried to do everything we can for him." Tr. p. 99. Since first being placed on probation in November 2014, L.U. repeatedly failed to reform his behavior through less restrictive placement. He was placed on probation, but he violated the terms of his probation four times. He received the benefit of home detention, but he had little to no adult supervision at home, and home detention did not deter future offenses. In addition, L.U. was twice detained at the ACJA, ordered to do community service, and ordered to participate in a treatment program with his mother. Despite having an opportunity to work, he failed to report a change in his employment status to his probation officer and he committed a new offense, both violations of the terms of his probation. Unfortunately, L.U. has made too many bad choices and has left the juvenile justice system with no alternative but to order that he be committed to the DOC.

The judgment of the juvenile court is affirmed.

Mathias, J., and Altice, J., concur.