Randall J. LASHLEY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A01–0009–CR–303.

Court of Appeals of Indiana.

March 26, 2001.

Transfer Denied June 14, 2001.

Loretta Lauer, Gregory T. Lauer, Lauer and Lauer, Martinsville, IN, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Randall J. Lashley ("Lashley") was convicted following a jury trial of Resisting Law Enforcement, as a Class A misdemeanor, and Failure to Identify Self, a Class C Misdemeanor. Lashley appeals, presenting the following issues for our review:

1. Whether the traffic stop of his vehicle was unreasonable under Article I, Section 11 of the Indiana Constitution.
2. Whether the State's charging information was defective, requiring the charges therein to be dismissed.
3. Whether the State presented sufficient evidence to support his convictions.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On the afternoon of November 29, 1999, Sergeant James Bolin of the Mooresville

Police Department was driving his step-daughter home from school on Highway 37 through Martinsville. He had just completed his shift and was in uniform and operating his marked police vehicle. Lashley passed Sergeant Bolin in his car traveling at a high rate of speed. Sergeant Bolin drove behind Lashley's car and paced it going 70 miles per hour, "sometimes a little over 70 miles per hour[,]" in a 55 mile-per-hour zone. Record at 121. Sergeant Bolin activated the lights of his police vehicle, intending to initiate a traffic stop and warn Lashley about his speed.[1] However, Lashley did not pull over until Sergeant Bolin activated his siren. Lashley traveled approximately one and a half miles before pulling over.

After coming to a complete stop, Lashley jumped out of his car and approached Sergeant Bolin's police vehicle, yelling profanities at the officer and demanding to know what he wanted. Sergeant Bolin asked to see Lashley's license and registration but Lashley refused, asserting that Sergeant Bolin's police vehicle was from Mooresville and that he "[did not] have any more jurisdiction than that girl in the car with you there." Record at 130. Lashley told Sergeant Bolin, "I'm not showing you anything," hurried back to his car, and drove away from the scene. Record at 130.

Sergeant Bolin proceeded to follow Lashley with his lights and siren activated. Lashley drove an additional two miles before pulling over again. He continued to challenge Sergeant Bolin's jurisdiction and refused to produce his license and registration. Deputies from the Morgan County Sheriff's Department arrived to assist Sergeant Bolin, who ultimately arrested Lashley for resisting law enforcement and refusing to identify himself.

The State charged Lashley with resisting law enforcement, as a Class D felony, and refusal to identify self, a Class C misdemeanor. A jury found Lashley guilty as charged. The trial court entered judgment of conviction on the resisting count as a Class A misdemeanor[2] and on the refusal to identify count as a Class C misdemeanor.

### DISCUSSION AND DECISION

#### Issue One: Sergeant Bolin's Stop

Lashley first contends that Sergeant Bolin abused his authority under Indiana Code Section 34–28–5–3 when he stopped Lashley's car and that the traffic stop was, therefore, unreasonable under Article I, Section 11 of the Indiana Constitution. He argues this, however, for the first time on appeal.[3] Prior to trial, Lashley filed a motion to suppress alleging that Sergeant Bolin "had *no* authority to stop the Defendant because he was not committing a felony or misdemeanor and had no warrant for the Defendant." Record at 13 (emphasis added). At trial, Lashley tendered a jury instruction on the Fourth Amendment to the United States Constitution, which the trial court read to the jury. His opening and closing arguments were

---

1. Driving in excess of the speed limit is a Class C infraction. Ind.Code §§ 9–21–5–2 and –13.

2. The trial court may exercise its discretion under Indiana Code Section 35–50–2–7(b) and enter judgment of conviction on a Class D felony as a Class A misdemeanor.

3. The only instance in the record where Lashley even remotely refers to Article I, Section 11 of the Indiana Constitution is when he objects to the State's tendered instruction on Indiana Code Section 34–28–5–3. Lashley argues that stopping a motorist in accordance with the statute "would clearly violate the [F]ourth [A]mendment of [the] Indiana and U.S. Constitutions against unreasonable searches and seizures." Record at 76.

also focused solely on Fourth Amendment jurisprudence, wherein he urged that Sergeant Bolin's traffic stop "was unreasonable and violates this specific amendment." Record at 300. It is well settled that a party cannot add to or change his grounds for objection on appeal and that any grounds not raised at trial are not available on appeal. *Johnson v. State,* 472 N.E.2d 892, 910 (Ind.1985) (concluding that defendant waived any alleged error where he raised different ground of error on appeal than raised at trial). Accordingly, Lashley's claim of error is waived.

■ Waiver of the issue notwithstanding, Indiana Code Section 34–28–5–3 provides:

> Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time sufficient to:
>
> (1) inform the person of the allegation;
>
> (2) obtain the person's:
>
>> (A) name, address, and date of birth; or
>>
>> (B) driver's license, if in the person's possession; and
>
> (3) allow the person to execute a notice to appear.

This statute clearly states that a law enforcement officer may, at any time, detain a person suspected of committing an infraction. *State v. Russ,* 480 N.E.2d 248, 251 (Ind.Ct.App.1985) (interpreting predecessor statute), *trans. denied.* There is no jurisdictional limitation on the authority of law enforcement officers, including city police officers, to detain or stop individuals for committing infractions.[4] *See id.* Here, Sergeant Bolin observed Lashley traveling at a high rate of speed and paced him at speeds in excess of 70 miles per hour in a 55 mile-per-hour zone. Indeed, Lashley admitted that he had been speeding when Sergeant Bolin pulled him over. Sergeant Bolin was therefore within his authority under Indiana Code Section 34–28–5–3 to stop Lashley.

■ Nevertheless, Lashley maintains that Sergeant Bolin's "real reason [for stopping him] was to respond to what he perceived as Lashley's disrespect to his police car and for daring to pass the police car on a highway." Brief of Appellant at 7. Lashley thus argues that "the circumstances of this particular stop were unreasonable and amount to an abuse of [Sergeant Bolin's] authority [under Indiana Code Section 34–28–5–3]." Brief of Appellant at 8. We cannot agree.

■ It is well settled that a lawful stop for a bona fide traffic violation, even if pretextual, does not convert the stop into an unconstitutional search and seizure. *Kenner v. State,* 703 N.E.2d 1122, 1126 n. 1 (Ind.Ct.App.1999), *trans. denied; State v. Voit,* 679 N.E.2d 1360, 1363 (Ind. Ct.App.1997) (upholding search of vehicle where police stopped suspect for speeding, even though primary motivation was to investigate drug activity). A police officer's subjective motives for initiating an investigatory stop are irrelevant in Fourth Amendment analysis, and a stop will be valid provided there is an objectively justifiable reason for it. *State v. Dodson,* 733

**4.** Indiana Code Section 9–30–2–2 does provide that a law enforcement officer may not arrest or issue a traffic citation to a person for violation of an Indiana law unless the officer is wearing a distinctive uniform and badge of authority or is operating a motor vehicle that is clearly marked as a police vehicle. It is undisputed that Sergeant Bolin was both in uniform and driving an officially marked police vehicle at the time he pulled Lashley over, and Lashley does not allege that Indiana Code Section 9–30–2–2 was violated. *See Russ,* 480 N.E.2d at 251 n. 1.

N.E.2d 968, 972 (Ind.Ct.App.2000). If there is an objectively justifiable reason for the stop, then the stop is valid whether or not the police officer would have otherwise made the stop but for ulterior suspicions or motives. *Voit,* 679 N.E.2d at 1362. Lashley's undisputed violation of the speed limit provided Sergeant Bolin with an objectively justifiable reason to stop him. We conclude that Sergeant Bolin's stop of Lashley's vehicle was authorized by statute and not unreasonable.

**Issue Two: Charging Information**

▆▆ Lashley next challenges the validity of the State's charging information. He asserts that the charging information was defective because Sergeant Bolin signed it, "I affirm under the penalties of perjury that the foregoing representations are true to the best of my knowledge and belief[,]" *before* the prosecutor had inserted the charges against him.[5] Record at 3. This discrepancy was revealed during Lashley's cross-examination of Sergeant Bolin. Lashley argued at trial and argues again on appeal that the "improperly sworn signature to [the] charging information renders the charges therein void and subject to dismissal for not constituting a public offense." Brief of Appellant at 9. We cannot agree.

Indiana Code Section 35–34–1–2(b) provides that "[a]n information shall be signed by the prosecuting attorney or his deputy and sworn to or affirmed by him or any other person." We have held that the purpose of requiring the signature of the prosecuting attorney or his deputy to an information is "to assure that such prosecutions have been investigated by and approved by the only officer authorized to

initiate criminal prosecutions, namely, the prosecuting attorney." *Brown v. State,* 403 N.E.2d 901, 910 (Ind.Ct.App.1980); *Lynn v. State,* 207 Ind. 393, 193 N.E. 380, 381 (1934) (observing that absence of prosecutor's signature on charging information requires trial court to sustain motion to quash in which it is alleged that facts stated in information do not constitute public offense). We have further noted that the requirement that a prosecutor indorse an information is not "a mere technical formality." *Lynn,* 193 N.E. at 382.

Here, for administrative convenience, Sergeant Bolin signed a blank charging information under oath, which was approved by Monte Kivett, then a Morgan County deputy prosecutor. On its face, the charging information satisfied the requirements of Indiana Code Section 35–34–1–2(b). *See Adamovich v. State,* 529 N.E.2d 346, 348 (Ind.Ct.App.1988); *cf. Anderson v. State,* 439 N.E.2d 558, 560 (Ind.1982) (finding information charging defendant as habitual offender defective because it was not sworn by anyone and was factually deficient). While Sergeant Bolin should have sworn to the contents of the information *after* the charges had been inserted, on these facts his failure to do so did not render the charging information fatally defective or require dismissal of the charges against Lashley.

▆▆ Unlike a prosecutor's signature of approval, which is necessary because he is the only officer authorized to initiate a criminal prosecution on behalf of the State, a prosecuting witness' signature serves simply to foreclose the filing of frivolous charges by imposing the penalties of perjury upon the prosecuting witness. *See Hendricks v. State,* 426 N.E.2d 367,

---

**5.** The State filed an original charging information and an amended charging information. Sergeant Bolin signed both informations before the charges against Lashley had been inserted by the prosecutor. For ease of discussion, we refer to the informations in the singular.

370 (Ind.1981) (holding that verification requirement of delinquency petition serves to foreclose bringing of frivolous petitions by imposing penalties of perjury on petitioner); *Bowling v. State,* 248 Ind. 663, 230 N.E.2d 439, 442–43 (1967) (noting that absence of prosecuting witness' signature on affidavit did not deprive court of jurisdiction). When Sergeant Bolin submitted the pre-signed charging information, he also submitted his police report, his suggested charges, and "any information pertinent to the charges[,]" and the State charged Lashley based upon the evidence identified by Sergeant Bolin. Record at 172, 181. The State also filed Sergeant Bolin's probable cause affidavit averring under penalties of perjury the facts supporting the charges against Lashley. At trial, the sergeant testified under oath to the allegations contained in the charging information. Sergeant Bolin's sworn testimony both in his affidavit and at trial effectively served the purpose of assuring that the charges against Lashley were not frivolous. *See Hendricks,* 426 N.E.2d at 370 (holding that defendant failed to show his substantial rights were prejudiced by failure of witness to verify delinquency petition and that witness' sworn testimony served purpose of assuring petition was not frivolous).

■■■ Defects or imperfections in an affidavit are only grounds for reversal where they prejudice the substantial rights of the defendant. *Schlacter v. State,* 466 N.E.2d 1, 2 (Ind.1984); *see also* Ind. Trial Rule 61 (governing harmless error). Lashley has not shown that his substantial rights were prejudiced in this case. We find no reversible error.

### Issue Three: Sufficiency of the Evidence

■■■ Lashley contends that the State presented insufficient evidence to support his convictions for resisting law enforcement and refusal to identify self. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Fish v. State,* 710 N.E.2d 183, 184 (Ind. 1999). Instead, we look to the evidence most favorable to the State and all of the reasonable inferences to be drawn from that evidence. *Bartlett v. State,* 711 N.E.2d 497, 499 (Ind.1999). A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Fish,* 710 N.E.2d at 184.

■■■ Resisting law enforcement, as a Class A misdemeanor, is defined in Indiana Code Section 35–44–3–3 in part as follows:

(a) A person who knowingly or intentionally:

\* \* \*

(3) flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop[.]

Ind.Code § 35–44–3–3(a)(3). The offense is elevated to a Class D felony if the person uses a vehicle to commit the offense. Ind.Code § 35–44–3–3(b)(1)(A). Additionally, Indiana Code Section 34–28–5–3.5 reads:

A person who knowingly or intentionally refuses to provide either the person's:

(1) name, address, and date of birth; or

(2) driver's license, if in the person's possession;

to a law enforcement officer who has stopped the person for an infraction or ordinance violation commits a Class C misdemeanor.

With respect to both of his convictions, Lashley maintains that the State failed to prove he acted intentionally.

▇▇▇ A person engages in conduct intentionally if, when he engages in the conduct, it is his conscious objective to do so. Ind.Code § 35–41–2–2. Intent is a mental function and, absent admission, it must be determined by courts and juries from a consideration of the defendant's conduct and the natural and usual consequences of such conduct. *Metzler v. State,* 540 N.E.2d 606, 609 (Ind.1989). Because intent is a mental state, the trier of fact must usually resort to reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, a showing or inference of intent to commit that conduct exists. *Id.*

Here, the evidence was overwhelming that Lashley acted intentionally. Lashley admitted that he had been speeding and testified, "I had no doubt [Sergeant Bolin] was a[p]olice [o]fficer when he [pulled me over]." Record at 272. Sergeant Bolin testified that when he asked Lashley to produce his license and registration, Lashley informed him, "I'm not showing you anything[.]" Record at 130. Lashley again told Sergeant Bolin, "I'm not going to talk to you about anything" before hurrying back to his car and leaving the scene. Record at 130. Lashley testified that he "made [the] decision" to drive away without producing the requested documents.[6] Record at 274. Sergeant Bolin

followed Lashley for an additional two miles with the lights and siren of his police vehicle activated before Lashley pulled over a second time. *See State v. Blake,* 468 N.E.2d 548, 550 (Ind.Ct.App.1984) (observing that defendant's failure to stop in response to police lights and siren was chargeable as resisting law enforcement and constituted Class A misdemeanor); *Jones v. State,* 164 Ind.App. 252, 328 N.E.2d 221, 223 (1975) (finding that defendant's observations of police officer and marked patrol car before resuming flight permitted reasonable inference that when defendant resumed flight, he did so knowing he had been commanded by police officer to stop).

▇▇▇ Nevertheless, Lashley maintains that "since [he] never believed [Sergeant] Bolin had police authority in Martinsville, or Morgan County, he did not have the necessary intent to resist [Sergeant] Bolin nor the necessary intent to refuse to identify himself to [Sergeant] Bolin." Brief of Appellant at 12. We cannot agree.

▇▇▇ This court has held that evidence of flight following a police officer's order to stop is admissible in a prosecution for resisting law enforcement regardless of the lawfulness of the order. *Corbin v. State,* 568 N.E.2d 1064, 1065 (Ind.Ct.App. 1991). In so holding, this court has observed that Indiana Code Section 35–44–3–3(a)(3) "does not condition the offense upon a lawful order." *Id.* Likewise, Lashley was not permitted to flee from Sergeant Bolin's show of authority, regardless of whether that authority was, in Lashley's subjective view, unlawful. In

---

**6.** Indeed, Lashley's position at trial, as reflected by defense counsel's closing arguments, was that he had been "standing up for

what he believes is right[,]" that is, his "right to be free and unhassled by [p]olice." Record at 308.

any event, as we have already noted, there is no jurisdictional limitation on the authority of city police officers to detain or stop individuals for committing infractions. *See* Ind.Code § 34–28–5–3; discussion, *supra.*

Finally, when an officer stops a person for an infraction such as violating the speed limit, he has "statutory justification" for requesting that the person produce his license and "for expecting [the person] to comply with his request." *See State v. Harris*, 702 N.E.2d 722, 726 (Ind. Ct.App.1998). We discern nothing in the elements of Indiana Code Section 34–28–5–3.5 requiring the State to prove not only that Lashley knowingly or intentionally refused to provide his driver's license, but also that he knew Sergeant Bolin was within his authority to stop Lashley for the infraction. In sum, the State presented sufficient evidence to support Lashley's convictions for resisting law enforcement and refusal to identify self.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.