Christopher **ALSPACH**, Appellant–
Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 27A02–0102–CR–116.

Court of Appeals of Indiana.

Sept. 11, 2001.

Beau J. White, Marion, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

After a sheriff's deputy made a warrantless entry into Christopher Alspach's apartment, Alspach was charged and convicted of Resisting Law Enforcement, as a Class A misdemeanor.[1] Alspach now appeals and raises the following restated issue for our review:

> Whether the State presented sufficient evidence that the arresting officer was lawfully executing his duties when he arrested Alspach inside his apartment.[2]

We affirm.

### FACTS AND PROCEDURAL HISTORY

In March 2000, Grant County Sheriff's Deputy Mike Jacob was dispatched to an East Tenth Street apartment in Matthews after police received reports of loud noises and a possible fight in progress. Jacob arrived at the scene and noticed on the outside stairs fresh blood drops that trailed toward the apartment in question. Jacob approached the apartment's front door, which was slightly ajar, and announced his presence. Jacob got no response but he heard someone inside yelling incoherently. Jacob then pushed the front door open and entered the apartment. Jacob followed the trail of blood into the apartment and found Alspach in the apartment's back bedroom. When Jacob asked if there was a problem, Alspach cursed at him and shoved him out of the way as he walked toward the kitchen. Jacob followed him and Alspach twice attempted to punch Jacob as the two stood in the kitchen. Jacob subdued Alspach with pepper spray and placed him under arrest.

The State charged Alspach with resisting law enforcement and Battery, as a Class A misdemeanor. Following a bench trial, Alspach was convicted of resisting law enforcement and sentenced to one year executed. This appeal followed.

### DISCUSSION AND DECISION

Alspach argues that the state presented insufficient evidence to support his conviction for resisting law enforcement. When reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Salama v. State,* 690 N.E.2d 762, 764 (Ind.App.1998). We are constrained to consider only that evidence most favorable to the judgment together with all reasonable and logical inferences

---

1. Ind.Code § 35–44–3–3(a)(1)

2. Alspach couches his argument as a challenge to the sufficiency of the evidence, but the essence of his argument is that officer Jacob violated his Fourth Amendment rights when Jacob made a warrantless entry into his apartment. *See Shoultz v. State,* 735 N.E.2d 818, 822 (Ind.Ct.App.2000).

to be drawn therefrom. *Id.* If there is substantial evidence of probative value to support the court's conclusion, we will not overturn the conviction. *Id.* Alspach claims that when Jacob entered his apartment without a warrant, Jacob violated Alspach's right to be free from an unreasonable search and seizure and was therefore not "lawfully engaged in the execution of his duties as an officer," Ind.Code § 35-44-3-3(a),[3] when he arrested Alspach. We cannot agree.

■ The common law rule that allows an individual to resist with reasonable force an unlawful arrest by police is no longer the law in Indiana. *See Fields v. State*, 178 Ind.App. 350, 382 N.E.2d 972, 975–976 (Ind.Ct.App.1978) (declaring the common law rule to be "outmoded in our modern society"). The common law right of forceful resistance to an unlawful arrest tends to promote violence and increases the chances of someone getting injured or killed. *Id.* at 976. A citizen today can seek his remedy for a police officer's unwarranted and illegal intrusion into the citizen's private affairs by bringing a civil action. *Id.* Accordingly, the Indiana rule is that "a private citizen may not use force in resisting a peaceful arrest by an individual [whom] he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful." *Shoultz v. State*, 735 N.E.2d 818, 823 (Ind.Ct.App.

2000) (quoting *Casselman v. State*, 472 N.E.2d 1310, 1315 (Ind.Ct.App.1985)). In particular, this court has noted that Indiana Code Section 35-44-3-3(a)(3) does not condition the offense of resisting law enforcement upon a lawful order. *Corbin v. State*, 568 N.E.2d 1064, 1065 (Ind.Ct. App.1991); *see also Lashley v. State*, 745 N.E.2d 254, 261 (Ind.Ct.App.2001) (declaring that defendant was not permitted to flee from officer's show of authority, regardless of whether that authority was unlawful), *trans. denied.*

■ We have not, however, interpreted this rule as a blanket prohibition that criminalizes any conduct evincing resistance where the means used to affect an arrest are unlawful. *Shoultz*, 735 N.E.2d at 823. Notably, we have recognized an exception where police unlawfully enter a person's residence, determining that a greater privilege exists to resist an unlawful entry into private premises than to resist an unlawful arrest in a public place.[4] *Adkisson v. State*, 728 N.E.2d 175, 179 (Ind.Ct.App.2000) (citing to *Casselman*, 472 N.E.2d at 1315–16). Further, unlawful entry into one's home represents the use of excessive force and any arrest pursuant to that entry cannot be considered peaceable. *Id.* A citizen, therefore, has the right to resist the unlawful entry. *Id.*

■ In this case, because Jacob entered Alspach's home without consent or a search warrant and arrested Jacob after

---

**3.** This statute provides, in relevant part:

> (a) A person who knowingly or intentionally:
> (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer;
>
> *   *   *
>
> commits resisting law enforcement, a Class A misdemeanor....

**4.** The rationale that underlies this exception to the rule that a citizen cannot resist even an unlawful arrest may be summarized as follows: Most cases dealing with resisting law enforcement have dealt with arrests occurring in public places and the unlawfulness of such arrests arose from the absence of sufficient grounds for the arrests. Unlawful home entry, on the other hand, concerns not the grounds for the arrest but the means used to effect the arrest. *See Casselman*, 472 N.E.2d at 1316; *Adkisson*, 728 N.E.2d at 179.

he tried to resist, the general rule does not apply. We, therefore, must determine whether Jacob lawfully entered Alspach's residence. We conclude that he did.

The principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter a residence for purposes of search or arrest. *State v. Straub,* 749 N.E.2d 593, 597 (Ind. Ct.App.2001) (citing *Welsh v. Wisconsin,* 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)). Accordingly, searches and seizures inside a home without a warrant are presumptively unreasonable. *Id.* However, public interest occasionally demands greater flexibility than is offered by the warrant requirement, and, as such, certain exceptions to it exist. *Id.* Termed exigent circumstances, such have been found (1) where a suspect is fleeing or likely to take flight in order to avoid arrest; (2) where incriminating evidence is in jeopardy of being destroyed or removed unless an immediate arrest is made; (3) where a violent crime has occurred and entry by police can be justified as means to prevent further injury or to aid those who have been injured; and (4) in cases that involve hot pursuit or movable vehicles. *Snellgrove v. State,* 569 N.E.2d 337, 340 (Ind.1991). The State bears the burden of demonstrating that exigent circumstances existed in order to overcome the presumption of unreasonableness that accompanies all warrantless home entries. *Straub,* 749 N.E.2d at 598 (citing *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).

Here, Officer Jacob testified that when he arrived at the scene, he noticed fresh "drops of blood" on the outside stairs leading up to Alspach's apartment. Appendix of App. at 53. Jacob approached the apartment's front door, which he noticed was slightly ajar, and announced his presence. After getting no response, Jacob announced his presence a second time and "[heard] some yelling" coming from inside the apartment. Appendix of App. at 59. Jacob followed the trail of blood into the apartment which led him first to the kitchen and then to the back bedroom where he first encountered Alspach. Jacob further testified that he did not attempt to obtain a warrant to enter the apartment after discovering the blood and hearing someone yell because he "didn't know if someone was in danger or what the problem was." Appendix of App. at 62.

This evidence demonstrates that exigent circumstances justified Jacob's warrantless entry into Alspach's apartment. When Jacob discovered the trail of blood leading up the outside steps of the apartment to Alspach's front door, he reasonably concluded that delay in entering the apartment might result in further injury or deterioration in the condition of someone inside the apartment who was apparently bleeding. *See Britt v. State,* 182 Ind.App. 546, 395 N.E.2d 859, 861–62 (1979) (finding that exigent circumstances existed for entry into house containing armed gunman where police found fresh blood on the door). Further, after Jacob announced his presence, he heard incoherent screaming emanating from inside the apartment, which added to his concern that someone was presently under attack or injured and in need of assistance. *Cf. Cannon v. State,* 414 N.E.2d 578, 580 (Ind. Ct.App.1980) (concluding that exigent circumstances for entry into house existed where police encountered someone yelling and honking car horn from across street and heard house's occupants "scatter and run throughout the house" when they knocked and announced their presence). Under these facts and circumstances, we conclude that Jacob did not violate Al-

spach's Fourth Amendment rights and was, therefore, lawfully engaged in the execution of his official duties when he subsequently arrested Alspach inside the apartment.

## CONCLUSION

In sum, the general rule that a citizen may not resist even an unlawful arrest does not apply in this case because Alspach enjoys a greater privilege to resist an unlawful entry into his private residence than to resist an unlawful arrest in a public place. However, since exigent circumstances justified Jacob's warrantless entry into Alspach's apartment, the State met its burden to demonstrate that Jacob was lawfully engaged in his official duties when he arrested Alspach. The State, therefore, presented sufficient evidence to convict Alspach of resisting law enforcement, and we affirm the judgment of the trial court.

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.