# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Oct 23 2013, 10:51 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| PHILLIP GRIFFIN, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )    No. 49A02-1212-CR-964 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara Collins, Judge
The Honorable Deborah J. Shook, Master Commissioner
Cause No. 49F08-1206-CM-43920

**October 23, 2013**

**OPINION - FOR PUBLICATION**

**SHEPARD, Senior Judge**

Citizens are obliged to obey a police officer's order to stop when the officer has probable cause or reasonable suspicion to believe that criminal activity may be afoot. When there is no indication of possible criminal activity, does a citizen who walks away commit the crime of resisting arrest by departing? We think it cannot be so, consistent with the Fourth Amendment, and reverse appellant Phillip Griffin's conviction for resisting law enforcement.

On the other hand, whether Griffin's conviction for battering an officer while being placed under arrest stands on different grounds. We affirm it.

FACTS AND PROCEDURAL HISTORY

On June 27, 2012, Officer Matthew Miller of the Lawrence Police Department was on patrol, in uniform and in a marked police car. He passed Phillip Griffin, who was walking down the street. When Miller looked in his rearview mirror, Griffin appeared to be gesturing at him. It appeared to Officer Miller that Griffin was "maybe unstable," Tr. p. 6, so Miller called for backup as he turned around and drove back to Griffin.

Miller got out of his car and asked Griffin what was happening. Griffin, shouting in a "kind of incoherent" manner, *id.*, accused Miller of trying to run him over. Next, although the two men were standing fifteen feet apart, Griffin threw "two kind of shadow punches" at Miller and ran away from him. *Id.*

Miller pursued Griffin, shouting at him to stop and warning that he would use his Taser if necessary. When Griffin did not stop, Miller deployed his Taser, which struck Griffin and caused him to fall to the ground. Griffin stood up and struck Miller with his hands and feet as Miller attempted to handcuff him. At this point, several other officers

2

arrived. They tackled Griffin, tased him four times, and eventually handcuffed him. Tr. pp. 18-20.

The State charged Griffin with two counts of resisting law enforcement, both class A misdemeanors. Ind. Code § 35-44-3-3 (2011).[1] It also charged him with two counts of battery upon a law enforcement officer, both class A misdemeanors. Ind. Code § 35-42-2-1 (2009). One of these counts alleged battery on Miller during the initial encounter; the other count alleged battery on the officers who subdued Griffin a moment later.

After a bench trial, the court found Griffin guilty of battering Miller and of resisting law enforcement in relation to disregarding Miller's command to stop. The court found Griffin not guilty of the other two charges.

The court sentenced Griffin to two concurrent terms of 365 days, to be suspended and served on probation. Furthermore, the court ordered him "to do 24 hours of community service work in lieu of his court costs" and found him indigent as to all other fees. Tr. p. 39.

ISSUES

Griffin raises two issues:

I.      Whether the evidence is sufficient to sustain his convictions.

II.     Whether the trial court abused its discretion by ordering him to perform community service in lieu of paying court costs.

---

[1] This statute was subsequently recodified as Indiana Code section 35-44.1-3-1 (2012).

## DISCUSSION AND DECISION

## I. SUFFICIENCY OF THE EVIDENCE

When an appellant challenges the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Joslyn v. State*, 942 N.E.2d 809 (Ind. 2011). We consider only the probative evidence and reasonable inferences supporting the judgment, and we will affirm if the evidence and reasonable inferences could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

### A. Resisting Law Enforcement, by Fleeing

Griffin does not argue that Indiana's statute on resisting law enforcement is unconstitutional. What he does contend is that when the evidence does not reflect any suggestion of criminal activity afoot, a citizen is free to terminate an encounter with an officer by walking away. There being no indication of any criminal activity in this case, Griffin says that the officer's command to stop was an "unreasonable seizure" in violation of the Fourth Amendment.

To convict Griffin of resisting law enforcement as charged, the State was required to prove beyond a reasonable doubt that: (1) Griffin (2) fled (3) from Miller, a law enforcement officer, (4) after Miller, by visible or audible means, identified himself and ordered Griffin to stop. Ind. Code § 35-44-3-3.

The State cites to a number of cases in this Court which hold that the resisting statute does not require that the order to stop be lawful. In *Cole v. State*, 878 N.E.2d 882, 884 (Ind. Ct. App. 2007), for example, an officer drove up to a vehicle around which he

4

saw several people gathered. He did not see any actual sign of criminal activity, though the comings and goings were loosely suggestive of drug dealing. When the officer exited his car and asked the driver and the passenger, Cole, for identification, Cole got out of the car and began walking away. Cole disregarded several orders to get back in the car and then ran away, ignoring the officer's commands to halt. Another officer tasered Cole, who was subsequently subdued and placed in handcuffs.

The *Cole* panel was led to "doubt the propriety of the investigatory stop," *id.* at 886, but held it unnecessary to address Cole's claim of a Fourth Amendment violation, stating, "It is well settled that '[i]n Indiana, an individual may not flee from a police officer who has ordered the person to stop, regardless of the apparent or ultimate lawfulness of the officer's order.'" *Id.* at 886 (quoting *Dandridge v. State*, 810 N.E.2d 746, 749 (Ind. Ct. App. 2004), *trans. denied*).[2]

While this may adequately describe the structure of the statute, we think it but states the obvious that the government's seizure of a citizen is subject to limitation under the Fourth Amendment. As the Indiana Supreme Court has observed: "The Fourth Amendment requires that an arrest or detention for more than a short period be justified by probable cause." *Woods v. State*, 547 N.E.2d 772, 778 (Ind. 1989), *overruled in part on other grounds by Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Even brief detentions for investigatory purposes must rest on articulable facts that lead an officer to

---

[2] *Cole* and *Dandridge* belong to a line of cases standing for the proposition that the resisting law enforcement statute does not condition the offense upon a lawful order. *See State v. Howell*, 782 N.E.2d 1066, 1068 (Ind. Ct. App. 2003); *Lashley v. State*, 745 N.E.2d 254, 261 (Ind. Ct. App. 2001), *trans. denied*; *Corbin v. State*, 568 N.E.2d 1064, 1065 (Ind. Ct. App. 1991).

5

reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Of course, there are many altogether lawful contacts between officers and citizens in which neither probable cause nor articulable suspicion are present. These include conversations seeking information, in what the cases call "consensual encounters," where "the person to whom questions are put remains free to disregard the questions and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). Such interactions also occur in which a modest consensual encounter during a "community caretaking" run produces immediate indication of criminal activity warranting a seizure. *See, e.g.*, *Woodson v State*, 966 N.E.2d 135 (Ind. Ct. App. 2012), *trans. denied*; *R.H. v. State*, 916 N.E.2d 260 (Ind. Ct. App. 2009), *trans. denied*. The State has not responded in this case on these grounds or, for example, by citing cases in which detention is appropriate on mental health grounds. It stands instead on the *Cole* line of cases, saying that the crime of resisting is committed when a directive to halt is disobeyed, whether the directive was lawful or unlawful.

Most persons choose to stay when officers ask them to do so, but citizens who choose to depart cannot be regarded as committing a crime. As Justice Stewart wrote in *Mendenhall*, "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but to prevent arbitrary and oppressive interference

6

by enforcement officials with the privacy and personal security of individuals." *Id.* at 553-54 (quotation and citation omitted).[3]

As a recent decision of this Court declared, "We hold that as long as a seizure has not taken place within the meaning of the Fourth Amendment, a person is free to disregard a police officer's order to stop and cannot be convicted of resisting law enforcement for fleeing." *Gaddie v. State*, 991 N.E.2d 137, 141 (Ind. Ct. App. 2013), *trans. pending*.

In the present case, the State explicitly argues that it need not establish any facts giving rise to probable cause or articulable suspicion that would have warranted detaining Griffin in order to sustain the conviction. This position fits with the record, which does not reveal any facts warranting a detention. Griffin appeared to Miller to be unstable, and he threw "shadow punches" from a considerable distance before running away, but none of Griffin's actions suggested any criminal offense. Without evidence demonstrating grounds for detention, Griffin's conviction for resisting law enforcement must be reversed.

## B. Battery Upon a Law Enforcement Officer

Griffin's contention that there is insufficient evidence to sustain his conviction for battering Officer Miller focuses solely on his argument that he was defending himself from Miller's use of excessive force. This claim is subject to a very different analysis.

---

[3] Judge Najam provided a helpful roadmap to these three variations of police-citizen interaction. *See Overstreet v. State*, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000), *trans. denied*.

The common law rule, still widely recognized, has been that a citizen is permitted to use reasonable force to resist an illegal arrest. 5 Am. Jur. 2d *Arrest* § 89 (2007). Indiana's criminal code recognizes this principle through a section upon which Griffin relies:

> A person is justified in using reasonable force against a public servant if the person reasonably believes the force is necessary to:
>
> (1) protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force;
>
> (2) prevent or terminate the public servant's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle; or
>
> (3) prevent or terminate the public servant's unlawful trespass on or criminal interference with property lawfully in the person's possession, lawfully in possession of a member of the person's immediate family, or belonging to a person whose property the person has authority to protect.

Ind. Code § 35-41-3-2(i) (2012).

To convict Griffin of battery upon a law enforcement officer as charged, the State was required to prove beyond a reasonable doubt that: (1) Griffin (2) knowingly or intentionally (2) touched Miller, (3) a law enforcement officer, (4) in a rude, insolent, or angry manner. Ind. Code § 35-42-2-1.

A valid claim of self-defense is legal justification for an otherwise criminal act. *Mayes v. State*, 744 N.E.2d 390 (Ind. 2001). When a claim of self-defense is raised, the State must disprove at least one of the elements of self-defense beyond a reasonable doubt. *Taylor v. State*, 710 N.E.2d 921 (Ind. 1999). Whether a defendant acted in self-defense is generally a question of fact, and on appellate review the finder of fact's

8

conclusion is entitled to considerable deference. *Id.* A conviction in spite of a claim of self-defense will be reversed only if no reasonable person could say that the claim was negated by the State beyond a reasonable doubt. *Id.*

Under this statute, deciding whether the detainee's use of force was reasonable and whether he reasonably believed it was necessary to protect himself from imminent use of unlawful force is broadly a matter for the finder of fact. We think the facts here sufficient to support the conviction.

## II. COMMUNITY SERVICE IN LIEU OF FINE

Griffin says the trial court lacked authority to order him to perform community service in lieu of fines and costs.

Sentencing decisions, including decisions to impose restitution, fines, costs, or fees, are generally left to the trial court's discretion. *Kimbrough v. State*, 911 N.E.2d 621 (Ind. Ct. App. 2009). A defendant's indigency does not shield him from all costs or fees related to his conviction. *Banks v. State*, 847 N.E.2d 1050 (Ind. Ct. App. 2006), *trans. denied*. When the trial court suspends fines, it may impose any reasonable condition it deems appropriate. *Campbell v. State*, 551 N.E.2d 1164 (Ind. Ct. App. 1990). Even if error exists, an appellant is not entitled to reversal unless the error was prejudicial. *O'Connor v. State*, 590 N.E.2d 145 (Ind. Ct. App. 1992).

In this case, the court costs were $166, and the court ordered Griffin to perform twenty-four hours of community service in lieu of payment. To be sure, it is well established that a trial court may impose community service as a condition of probation,

Ind. Code § 35-38-2-2.3(a)(13) (2009), but the court did not impose community service as a condition of probation.

In resolving Griffin's claim, we follow this Court's recent decision in *Vaughn v. State*, 982 N.E.2d 1071, 1075 (Ind. Ct. App. 2013). The *Vaughn* panel declared that in the absence of statutory authority, a court may not impose community service in lieu of costs and fees. *Id.* Per the holding in *Vaughn*, we conclude the trial court erred by requiring Griffin to perform community service in lieu of paying court costs. We reverse the court's order to perform community service and remand to address the question of payment of costs.

## CONCLUSION

For the reasons stated above, we affirm the battery conviction, reverse the resisting conviction and the order of community service, remanding for further proceedings on the issue of costs.

Affirmed in part, reversed in part and remanded.

MATHIAS, J., concurs with separate opinion.

BAILEY, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

PHILLIP GRIFFIN,               )
                                     )
     Appellant-Defendant,      )
                                     )
         vs.                      )     No. 49A02-1212-CR-964
                                     )
STATE OF INDIANA,         )
                                     )
     Appellee-Plaintiff.       )

**MATHIAS, Judge, concurring**

I agree that Officer Miller lacked reasonable suspicion to detain Griffin for the purpose of investigating a possible crime, and therefore, Griffin was free to disregard Officer Miller's order to stop. Accordingly, I concur fully in the majority's conclusion that Griffin's conviction for resisting law enforcement must be reversed. However, I write separately to address concerns about Officer Miller's conduct in this case, particularly given his suspicion that Griffin suffered from a mental illness at the time in question.

Officer Miller testified that prior to detaining Griffin, he did not suspect that Griffin had committed a criminal offense, but he observed that Griffin was possibly mentally ill. See tr. p. 16. Had Officer Miller approached Griffin as a person who might need mental health treatment, this case would have turned out for the better, in every regard. Our mental health statutes provide that any law enforcement officer, who has

11

"reasonable grounds to believe that an individual has a mental illness, is either dangerous or gravely disabled, and is in immediate need of hospitalization and treatment, may . . . [a]pprehend and transport the individual to the nearest appropriate facility." Ind. Code § 12-26-4-1.

On the record before us, Griffin's motions in the officer's direction were observed by way of Officer Miller's rearview mirror, and when filtered through our statutory mental health detention criteria, would generally not even rise to the level of concern to justify involuntary detention. By any account, Griffin could not have appeared truly dangerous to himself or to others, or gravely disabled to the degree that he appeared to be in immediate need of hospitalization and treatment. Sadly, there are far too many Indiana citizens who are mentally ill to such a noticeable degree that they appear "troubled," but not to such an extent that they might reasonably seem to be dangerous or disabled. Simply said, Officer Miller could have justifiably decided not to intervene in the first place.

That said, we must also recognize the dilemma we put our law enforcement officers in regarding persons like Griffin. "A healthy, civil society is most robust when it feels safe and when that feeling of safety is validated through interaction with vigilant and responsive law enforcement engaged in the important business of policing neighborhoods within a community." R. H. v. State, 916 N.E.2d 260, 268 (Ind. Ct. App. 2009), trans. denied (Mathias, J., concurring). In his role as a community caretaker, Officer Miller would have acted reasonably had he chosen to intervene in order to assess Griffin as a person with possible mental illness and to proceed accordingly, rather than to

12

treat the encounter as a potential criminal offense from the outset. Had he done so, according to the evidence in the record, Griffin would have certainly appeared troubled, but not to the extent of appearing to be dangerous or gravely disabled, warranting immediate hospitalization and treatment.

There was no evidence in the record that would establish that Officer Miller had reason to believe that Griffin might have been involved in criminal activity, that he was a danger to the officer or members of the community, or a danger to himself. When Griffin ran from Officer Miller, the officer had not seized Griffin within the meaning of the Fourth Amendment, and had no constitutionally permissible reason to do so; therefore, Griffin was free to disregard his order to stop. See Gaddie, 991 N.E.2d at 141. Thankfully, Griffin was not injured when he was tazed during the incident, but the tazing likely would not have occurred at all had Officer Miller initially assessed Griffin under Indiana's mental health law, rather than under its criminal law.

Finally, it is important to remember that Officer Miller did what he was trained to do in the situation. What I hope and mean to suggest is that law enforcement officials throughout Indiana can best reaffirm their commitment to serve *all* of Indiana's citizens by remembering the criteria for mental health intervention as an initial alternative to treating troubling and troubled, but otherwise innocuous, conduct as a possible crime.

For all of these reasons, I concur in Senior Judge Shepard's opinion reversing Griffin's conviction for resisting law enforcement.

# IN THE
# COURT OF APPEALS OF INDIANA

PHILLIP GRIFFIN,                    )
                                    )
    Appellant-Defendant,        )
                                    )
       vs.                    )    No.  49A02-1212-CR-964
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.         )

**BAILEY, Judge, concurring in part and dissenting in part**

I concur in the affirmation of Griffin's conviction for battery. However, I respectfully dissent from the reversal of his conviction for resisting law enforcement.

Griffin did not merely choose to walk away in termination of a consensual encounter; he ran away and continued to flee despite repeated orders to stop. Griffin was convicted of violating Indiana Code section 35-44-3-3(a)(3), which then provided: "A person who knowingly or intentionally: flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop commits resisting law enforcement[.]" Griffin has made no challenge to the constitutionality of this statute, which imposes a duty upon a citizen to stop if ordered to do so by a law enforcement officer. Subsection (3) in particular does not condition compliance upon the officer being lawfully engaged in executing his or her duties.

14

In <u>Cole v. State</u>, 878 N.E.2d 882, 886 (Ind. Ct. App. 2007), a panel of this Court recognized:

> Because of the danger flight poses and the fact that a defendant has judicial remedies if he does not flee, the rule in our State is that even if a police officer does not have reasonable suspicion to stop a defendant, the defendant has no right to flee when the officer orders him to stop.

This conclusion was based upon a wealth of decisions: <u>Dandridge v. State</u>, 810 N.E.2d 746, 749 (Ind. Ct. App. 2004) (stating "In Indiana, an individual may not flee from a police officer who has ordered the person to stop, regardless of the apparent or ultimate lawfulness of the officer's order"), <u>trans. denied</u>; <u>State v. Howell</u>, 782 N.E.2d 1066, 1067 (Ind. Ct. App. 2003) (reversing order dismissing various criminal charges and observing "the general rule has become that a person may not flee from a police officer that orders a person to stop regardless of the lawfulness of the officer's order"); <u>Lashley v. State</u>, 745 N.E.2d 254, 261 (Ind. Ct. App. 2001) (recognizing that section 3 of the resisting law enforcement statute does not condition the offense upon a lawful order and declaring that defendant was not permitted to flee from officer's show of authority), <u>trans. denied</u>; <u>Corbin v. State</u>, 568 N.E.2d 1064, 1065 (Ind. Ct. App. 1991) ("evidence of flight following a police officer's order to stop is admissible in a prosecution for resisting law enforcement regardless of the lawfulness of the order"); <u>Alspach v. State</u>, 755 N.E.2d 209, 211 (Ind. Ct. App. 2001), ("A citizen today can seek his remedy for a police officer's unwarranted and illegal intrusion into the citizen's private affairs by bringing a civil action."), <u>trans. denied</u>.

The <u>Cole</u> decision also quoted approvingly the language of the New Jersey Supreme Court:

> [A]ny flight from police detention is fraught with the potential for violence because flight will incite a pursuit, which in turn will endanger the suspect, the police, and innocent bystanders.  Cases abound in which a suspect's flight from the police set in motion an ensuing chase that resulted in death or serious injury either to a police officer, a suspect, or a bystander.  For practical and public-policy-based reasons, constitutional decisionmaking cannot be left to a suspect in the street, even one who has done no wrong; a suspect cannot be the judge of his own cause and take matters into his own hands and resist or take flight.  This reasoned approach encourages persons to avail themselves of judicial remedies, and signals that if a person peaceably submits to an unconstitutional stop the result will be suppression of the evidence seized from him.

<u>Cole</u>, 878 N.E.2d at 886 (quoting <u>State v. Williams</u>, 192 N.J. 1, 926 A.2d 340, 347 (2007)).  I find this sound rationale to be particularly à propos here, where indeed the situation needlessly escalated and ultimately resulted in injury to the defendant.

I would follow the settled law as discussed in <u>Cole</u>.  For this reason, I dissent from the reversal of Griffin's conviction for resisting law enforcement.