# FOR PUBLICATION



**FILED**
Mar 18 2014, 9:39 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANTHONY C. LAWRENCE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONALD MURDOCK, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1306-CR-565 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

### APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Dennis D. Carroll, Judge
Cause No. 48C06-1107-FC-1358

**March 18, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant-Respondent Donald Murdock was found to have violated the terms of his probation when he committed Class A misdemeanor resisting law enforcement after running from a police officer who had told him to stop. Murdock contends that his probation revocation cannot stand because the State failed to establish that the officer had sufficient reason to detain Murdock. Because well-established Indiana precedent holds that a person may not flee from a police officer who has told him to stop, even if the order is unlawful, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

On November 7, 2011, Murdock pled guilty to Class C felony burglary and Class D felony theft. On December 19, 2011, the trial court sentenced Murdock to eight years of incarceration for burglary and eighteen months for theft, the sentences to be served concurrently, and suspended four years of the sentence to probation. Also on December 19, 2011, the trial court issued an amended sentencing order providing that Murdock would be placed in the Madison County Community Transition Program upon release from incarceration.

On April 3, 2013, Indianapolis Metropolitan Police Officer Vincent Stewart was on duty, in full uniform and driving a marked vehicle. Officer Stewart responded to a call regarding a subject fleeing another officer. Officer Stewart and others established a perimeter around an apartment complex. While in a vacant apartment, Officer Stewart observed Murdock running outside of the apartment. Officer Stewart gave chase, identified

2

himself as a police officer, and ordered Murdock to stop. Murdock continued to flee. Officer Stewart caught Murdock in a creek and attempted to grab him, but Murdock shoved Officer Stewart, causing injury and pain to Officer Stewart's left knee. Officer Stewart sprayed Murdock with pepper spray and took him into custody.

On May 9, 2013, the State filed a notice of probation violation, alleging, *inter alia*, that on or about March 31, 2013, Murdock violated the terms of his probation by committing Class A misdemeanor resisting law enforcement. On June 10, 2013, the trial court held a hearing on the notice and found that he had violated the terms of his probation by committing Class A misdemeanor resisting law enforcement. The trial court ordered that Murdock serve three-and-one-half years of his previously suspended sentence.

## DISCUSSION AND DECISION

Probation is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Marsh v. State*, 818 N.E.2d 143, 146 (Ind. Ct. App. 2004) (quoting *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999)). We review a trial court's probation revocation for an abuse of discretion. *Sanders v. State*, 825 N.E.2d 952, 956 (Ind. Ct. App. 2005), *trans. denied*. If the trial court finds that the person violated a condition of probation, it may order the execution of any part of the sentence that was suspended at the time of initial sentencing. *Stephens v. State*, 818 N.E.2d 936, 942 (Ind. 2004). Proof of a single violation of the conditions of probation is sufficient to support the decision to revoke probation. *Bussberg v. State*, 827 N.E.2d 37, 44 (Ind. Ct. App. 2005).

A person resists law enforcement if that person "flees from a law enforcement officer

after the officer has, by visible or audible means … identified himself or herself and ordered the person to stop[.]" Ind. Code § 35-44-3-3(a)(3). Murdock does not dispute that he fled from Officer Stewart after being told to stop but contends that the trial court erred in finding that he committed Class A misdemeanor resisting law enforcement because Officer Stewart allegedly lacked reasonable suspicion to detain him. We disagree.

> It is well settled that "[i]n Indiana, an individual may not flee from a police officer who has ordered the person to stop, regardless of the apparent or ultimate lawfulness of the officer's order." *Dandridge v. State*, 810 N.E.2d 746, 749 (Ind. Ct. App. 2004), *trans. denied*; *see also State v. Howell*, 782 N.E.2d 1066, 1067 (Ind. Ct. App. 2003); *Lashley v. State*, 745 N.E.2d 254, 261 (Ind. Ct. App. 2001), *trans. denied*; *Corbin v. State*, 568 N.E.2d 1064, 1065 (Ind. Ct. App. 1991). On several occasions, this Court has noted that the resisting law enforcement statute does not condition the offense upon a lawful order. *Alspach v. State*, 755 N.E.2d 209, 211 (Ind. Ct. App. 2001), *trans. denied*; *Lashley*, 745 N.E.2d at 261; *Corbin*, 568 N.E.2d at 1065.… Because of the danger flight poses and the fact that a defendant has judicial remedies if he does not flee, the rule in our State is that even if a police officer does not have reasonable suspicion to stop a defendant, the defendant has no right to flee when the officer orders him to stop.

*Cole v. State*, 878 N.E.2d 882, 886 (Ind. Ct. App. 2007). Consequently, even if we assume, *arguendo*, that Officer Stewart had no legal right to detain Murdock, that fact does not affect the validity of the trial court's finding that Murdock committed resisting law enforcement.[1]

The judgment of the trial court is affirmed.

PYLE, J., concurs.

MATHIAS, J., dissents with opinion.

---

[1] Murdock relies on a recent decision from this court to support his argument that he had a right to flee from an illegal detention, *Gaddie v. State*, 991 N.E.2d 137, 141 (Ind. Ct. App. 2013), *trans. granted*, *opinion vacated*, 999 N.E.2d 417 (Ind. 2012). *Gaddie*, however, has been vacated by order of the Indiana Supreme Court. Unless and until the Indiana Supreme Court determines that one has the right to flee from an unlawful police request to stop, we shall follow the myriad Indiana cases holding that one has no such right.

# IN THE
# COURT OF APPEALS OF INDIANA

DONALD MURDOCK,      )
      )
    Appellant-Defendant,     )
      )
     vs.      )    No. 48A02-1306-CR-565
      )
STATE OF INDIANA,      )
      )
    Appellee-Plaintiff.     )

**MATHIAS, Judge dissenting**

I respectfully dissent from the majority's holding that there was evidence that Murdock committed the crime of resisting law enforcement by fleeing.

The Fourth Amendment to the United States Constitution provides, *"The right of the people to be secure in their persons*, houses, papers, and effects, *against unreasonable searches and seizures, shall not be violated*, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (emphasis added).  Article 1, Section 11 of the Indiana Constitution echoes this language, providing, *"The right of the people to be secure in their persons*, houses, papers, and effects, *against unreasonable search or seizure, shall not be violated*; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be

5

seized." (emphasis added).

Although Article 1, Section 11 tracks the language of the Fourth Amendment, "interpretations and applications vary between them." Holder v. State, 847 N.E.2d 930, 935 (Ind. 2006). Indeed, our supreme court has repeatedly held that "'[t]he Indiana Constitution has unique vitality, even where its words parallel federal language.'" Id. (quoting State v. Gerschoffer, 763 N.E.2d 960, 963 (Ind. 2002)). Thus, "[w]hen we interpret language in our state constitution substantially identical to its federal counterpart, 'we may part company with the interpretation of the Supreme Court of the United States or any other court based on the text, history, and decisional law elaborating the Indiana constitutional right.'" Id. (quoting Ajabu v. State, 693 N.E.2d 921, 929 (Ind. 1998)). Accordingly, Indiana courts have interpreted Article 1, Section 11 to provide protections broader than those provided by the Fourth Amendment. See, e.g., Litchfield v. State, 824 N.E.2d 356, 363 (Ind. 2005) (holding that trash searches not based on individualized, reasonable suspicion were unreasonable under Article 1, Section 11 even though such searches had been held not to violate federal Fourth Amendment).

One of the seminal cases of Fourth Amendment jurisprudence is Terry v. Ohio, 392 U.S. 1 (1968). Only when a law enforcement officer has specific and articulable facts that lead the officer to the reasonable suspicion that criminal activity "may be afoot," or after one has been "seized," as that legal term of art has been defined over time, does walking or running away or ignoring a law enforcement officer's order to stop become the crime of resisting law enforcement. See Terry, 392 U.S. at 30, Litchfield, 824 U.S. at 364 (setting

6

forth reasonable suspicion tests).

I believe that Terry and Litchfield conflict with and supersede the holding in Corbin v. State, 568 N.E.2d 1064, 1065 (Ind. Ct. App. 1991), developed in its progeny, that "evidence of flight following a police officer's order to stop is admissible in a prosecution for resisting law enforcement regardless of the lawfulness of the order."[2] Without the articulable facts and reasonable suspicion required by Terry and Litchfield, Murdock committed no crime under the facts and circumstances before us.

In contrast, both Terry and Litchfield unambiguously endorse the rationale of the opinion of this court in Gaddie v. State, 991 N.E.2d 137 (Ind. Ct. App. 2013), trans. granted.[3] As noted in Gaddie, if a person is not free to disobey a police officer's order to stop, then that person has been "seized" for purposes of the Fourth Amendment. Id. at 141. To hold otherwise would mean that there can be no such thing as a consensual encounter between a citizen and a law enforcement officer in Indiana. See id. ("To agree with the rationale in Corbin would effectively render the consensual encounter nonexistent in the state of Indiana."). Indeed, an encounter with the police could never be consensual if all Hoosiers are subject to the command of law enforcement officers who can order us to stop on a whim. Therefore, before a person may be convicted of resisting a law enforcement officer by fleeing

---

[2] In Illinois v. Wardlow, 528 U.S. 119 (2000), the court held that a suspect's unprovoked flight from police in an area that was known to have a high incidence of narcotics trafficking, can support a finding of reasonable suspicion. But flight by itself is insufficient. See Burkes v. State, 842 N.E.2d 426, 431 (Ind. Ct. App. 2006) (citing United States v. Silva, 957 F.2d 157, 160 (5th Cir. 1992)).

[3] I acknowledge, as the majority notes, that our opinion in Gaddie has been vacated by transfer of that case to our supreme court. Nevertheless, until our supreme court issues its opinion on transfer in Gaddie, I am persuaded by the reasoning of our opinion in that case.

an officer after having been ordered to halt, the officer must have, at the very least, a reasonable suspicion of criminal activity beyond the act of fleeing upon which to base his order to halt.

The same result was reached by another panel of this court in Griffin v. State, 997 N.E.2d 375 (Ind. Ct. App. 2013), trans. granted.[4]  In that case, the defendant was convicted for resisting law enforcement by fleeing from a police officer who had no reasonable suspicion of any wrongdoing by the defendant.  In reversing Griffin's conviction, Senior Judge Shepard wrote, "Most persons choose to stay when officers ask them to do so, but citizens who choose to depart cannot be regarded as committing a crime." Id. at 380.  Again, we noted that without reasonable suspicion to detain a person, a police officer has no authority to seize that person.[5] Id.

Corbin and its progeny provide Hoosiers with some stark choices.  If an otherwise law-abiding citizen chooses to walk on, rather than engage in a conversation offered by a law enforcement officer, is that conduct resisting law enforcement?  If it is not, then why shouldn't the law and common sense demand that the officer have the articulable facts and reasonable suspicion called for in Terry before that conduct becomes the crime of resisting law enforcement?  Do we as a society want to empower law enforcement to be able to stop anyone, at any time, without articulable facts that lead an officer to reasonable suspicion that

---

[4]  Again, although our opinion in Griffin has also been vacated by our supreme court's grant of transfer, I remain persuaded by the rationale of our opinion in that case.

[5]  The fact that a person has no right to forcibly resist an unlawful arrest does not alter my opinion, as the concerns behind this rule are inapplicable when a person merely refuses to comply with an officer's order to stop. See Gaddie, 991 N.E.2d at 141.

criminal activity may be afoot?  I hope not.

Litchfield made it clear that law enforcement must have the articulable facts and reasonable suspicion called for in Terry before one's trash may be seized and examined for contraband or evidence of a crime.  Why would we require less to seize one's person? Litchfield also made it clear that OWI roadblocks were only permissible when every car on the road involved was stopped at the roadblock, so *that no individual is subject to arbitrary selection.* 824 N.E.2d at 360. If we do not require articulable facts and reasonable suspicion before a police officer's order to stop must be obeyed, we are subjecting Hoosiers to exactly the sort of arbitrary selection Litchfield condemned.

The logic of Corbin and its progeny also has unintended consequences for law enforcement.  If otherwise law-abiding citizens cannot legally refuse to engage with a law enforcement officer, then there is no such thing as a consensual encounter between law enforcement officers and citizens.  *Every* such encounter would be a seizure under the law and would require the administration of a Miranda advisement.  Is that that kind of society we want to live in? Does law enforcement want to lose the helpful tool of consensual encounters with citizens?  I hope not.

In the case before us, Officer Stewart articulated no facts that would support a reasonable suspicion that Murdock had committed a crime.  Instead, he testified that he received a call from another officer that someone matching Murdock's description was fleeing that officer, with no reference to any crime having been committed by the fleeing suspect.  All Officer Stewart saw was Murdock running from an apartment building, which is

not a crime. Thus, Officer Stewart did not testify as to any articulable facts that would support a reasonable suspicion sufficient to justify a <u>Terry</u> stop of Murdock, much less probable cause to formally arrest him. Under these facts and circumstances, Officer Stewart had no authority to detain Murdock.

Because I believed that Murdock did not commit the crime of resisting law enforcement by fleeing, I also believe that his probation cannot be revoked based on his alleged commission of the crime. Accordingly, I would find that the State failed to prove that Murdock violated the terms of his probation, and I respectfully dissent from the majority's holding to the contrary.