## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.





**FILED**

Jan 29 2016, 9:03 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Jayson S. Roberts,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 29, 2016

Court of Appeals Case No.
63A05-1507-CR-1019

Appeal from the Pike Circuit Court

The Honorable Jeffrey L. Biesterveld, Judge

Trial Court Cause No.
63C01-1408-F3-361

---

**Pyle, Judge.**

## Statement of the Case

[1] Appellant/defendant, Jayson S. Roberts ("Roberts"), appeals the trial court's revocation of his probation and order that he serve the remainder of his

suspended sentence for Level 3 felony child molesting[1] in the Indiana Department of Correction ("DOC"). He argues that: (1) the trial court abused its discretion in revoking his probation because, even though he violated the conditions of his probation and work release, there were extenuating circumstances to his violations; and (2) the trial court abused its discretion in ordering him to serve the remainder of his suspended sentence in the DOC because he had taken steps to remedy the violations prior to the revocation hearing. Because we find that Roberts violated the conditions of his probation and because he had previously been granted leniency through less restrictive placements and had continued to violate the terms of those placements, we affirm the trial court's decision in both respects.

We affirm.

## Issues

1. Whether the trial court abused its discretion when it revoked Roberts' probation.

2. Whether the trial court abused its discretion when it ordered Roberts to serve his entire suspended sentence in the DOC.

## Facts

On September 16, 2014, Roberts pled guilty to Level 3 felony child molesting. Subsequently, on January 14, 2015, the trial court held a sentencing hearing

---

[1] IND. CODE § 35-42-4-3(a)(1).

and sentenced Roberts to twelve (12) years, with six (6) years executed in community corrections on work release and the balance suspended to probation. At the sentencing hearing, the trial court noted that it had not yet approved the terms of probation because the terms had been updated with special conditions recommended for adult sex offenders. The trial court asked Roberts' counsel whether he had gone over those terms with Roberts, and both Roberts and his counsel responded that he had. As a result, the trial court and Roberts signed the special conditions of probation, and Roberts initialed each individual condition.

[3] Among other provisions, Roberts' term number 26 of probation provided:

> You shall not access the internet or any other on-line service through use of a computer, cell phone, iPod, Xbox, Blackberry, personal digital assistant (PDA), pagers[,] Palm Pilots, televisions or any other electronic device at any location (including your place of employment) without prior approval of your probation officer. This includes any Internet service provider, bulletin board system, e-mail system or any other public or private computer network. . . .

(State's Ex. 1). In addition, Roberts was required to "remain employed" and to pay weekly fees of a minimum of $14.00 per day.

[4] On February 27, 2015, Roberts' work release coordinator filed a notice of community corrections violation alleging that Roberts had been terminated from his employment with Perdue Farms in Washington, Indiana. The notice stated that Roberts had "walked off the production line before the work was

done" even though he had been warned that doing so would be considered voluntary termination. (App. 59). The notice also alleged that Roberts had violated term number 26 of his probation by accessing the internet—to use Facebook—and that he owed work release fees in the amount $536.25.

[5] On March 2, 2015, the State moved to revoke Roberts' probation. The State also alleged that Roberts had violated term number 26 of his probation and that he had violated the terms and conditions of the work release program by failing to maintain employment and pay work release fees.

[6] On April 23, 2015, the trial court held a hearing on the motion to revoke Roberts' probation. At the hearing, Chris Yon ("Yon"), the Chief Probation Officer in Pike County, testified. He said that he was friends with Roberts' father on Facebook and had seen one day that people were posting condolences on his Facebook page because his father had just died. Yon had become suspicious that Roberts was still using the internet because, in response to those condolences, Roberts' father had written: "[P]lease don't post this. My, my son doesn't know just yet. He doesn't want to find out through the internet that his grandfather [] passed away." (Tr. 19). Yon testified that he had then found Roberts' public Facebook profile, which documented that Roberts had changed his profile picture on January 25 and February 14, 2015. Roberts had also responded, on January 25, 2015, to a friend's comment and had written, "I'm good[.] I have a deit [sic] its call [sic] workrelease and work for four more years." (State's Ex. 1) (grammar in original).

[7] Scott Brown ("Brown"), the Director of the Wabash Valley Regional Community Corrections, testified that Roberts had lost his job at Perdue because Perdue had wanted him to work overtime, and he had left work in spite of that fact. Brown said that Roberts had been unemployed for about a month before he had found new employment. He also confirmed that Roberts was behind on paying his work release fees. According to Brown, Roberts "rarely" paid his rent. (Tr. 37).

[8] Finally, Roberts testified. He admitted that he had used the internet and Facebook to talk to his relatives and "a couple of good friends" while he was on probation. (Tr. 50). He said that he had forgotten he was not allowed to use the internet and that when he had signed that probation condition in court, he had been "in a hurry" because he was "happy" and "just ready to get out of jail." (Tr. 49). He also said that he might have "skipped pas[t]" a couple of the conditions, and he alluded to the fact that he had a learning disability and "AHD." (Tr. 49).

[9] With respect to his employment, Roberts offered the following explanation for losing his job at Perdue:

> I told . . . my head team leader at the time, that I needed a replacement. That I could get, I could possibly get sick on line. And I was already feeling lightheaded. And they would not listen to me. And I told 'em [sic] several times. And eventually I just . . . got annoyed after about forty-five (45) minutes. Actually it was probably longer than that. To be honest. But I just got ignored. And I took off. And I told them. I'm like, I'm sick of

it. I need to get something in my stomach now before I do get sick.

(Tr. 42). With respect to his arrearage in fees, Roberts testified that he had planned to use part of his work checks to pay work release, but work release had not let him leave to get money orders for the payments.

[10] At the end of the hearing, the trial court concluded that Roberts had violated the terms of his placement in community corrections by failing to maintain employment and pay his fees and that Roberts had violated the terms of his probation by accessing the internet. Subsequently, the trial court held another hearing on May 21, 2015. At that hearing, the trial court revoked Roberts' probation and ordered that he serve the balance of his previously suspended sentence in the DOC. In support of this decision, the court explained:

> The reason the Court ordered a Pre[s]entence Investigation update in this matter was so that the Court could make an informed decision as to how best to handle this case. And what we have before the Court is a pattern of violations of less restrictive placements. Community Corrections has been tried on more than one occasion. The local jail has been tried. And unfortunately, Mr. Roberts continues to violate the rules of community corrections. Even with a filing after the defendant was found to have violated his placement in community corrections in this matter. So the Court is left with no alternative here but to order that the defendant serve the balance of his sentence in the Indiana Department of Corrections.

(Tr. 72-73). Roberts now appeals.

# Decision

On appeal, Roberts argues that the trial court abused its discretion by revoking his probation and by ordering him to serve his previously suspended sentence in the DOC. We will address each argument in turn.

## 1. Revocation of Probation

First, Roberts argues that the trial court abused its discretion by revoking his probation. He asserts that, even though the trial court found he had violated the conditions of his probation and work release on three occasions, there were extenuating factors that led to those violations. Specifically, he notes that when he lost his job at Perdue, he was fired for refusing to work overtime even though he had already completed his shift and was not feeling well. He also points out that he gained new employment after he was fired and was employed at the time of the probation revocation hearing. As for his internet usage, Roberts reasserts that he did not remember that he was not allowed to use the internet. He also argues that the purpose of prohibiting him from using the internet was to protect children, and he contends that the trial court should have been lenient because there was no evidence he used the internet to contact or harm children. Finally, Roberts notes that his failure to pay his fees was caused by economic hardship and that his failure could not, according to law, serve as the sole basis for the revocation of his probation.

"Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Jackson v. State*, 6 N.E.3d 1040, 1042 (Ind. Ct.

App. 2014) (quoting *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). The trial court determines the conditions of probation and may revoke probation if the conditions are violated. *Id.* We review a trial court's probation revocation for an abuse of discretion. *Sanders v. State*, 825 N.E.2d 952, 956 (Ind. Ct. App. 2005), *trans. denied.* An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court misinterprets the law. *Jackson*, 6 N.E.3d at 1042. In determining whether a trial court has abused its discretion, we look only to the evidence which supports the judgment and any reasonable inferences flowing therefrom. *Jenkins v. State*, 956 N.E.2d 146, 148 (Ind. Ct. App. 2011) (quoting *Richardson v. State*, 890 N.E.2d 766, 768 (Ind. Ct. App. 2001)), *trans. denied.* "In a sense, all probation requires 'strict compliance' because probation is a matter of grace, and once the trial court extends this grace and sets its terms and conditions, the probationer is expected to comply with them strictly." *Cain v. State*, 30 N.E.3d 728, 731-32 (Ind. Ct. App. 2015) (quoting *Woods v. State*, 892 N.E.2d 637, 641 (Ind. 2008)), *trans. denied.* As such, proof of a single violation of the conditions of probation is sufficient to support the decision to revoke probation. *Bussberg v. State*, 827 N.E.2d 37, 44 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied.* Further, our standard of review for a community corrections violation mirrors that for a probation violation. *See Holmes v. State*, 923 N.E.2d 479, 482-83 (Ind. Ct. App. 2010).

[14] Roberts admits that he violated the condition of his probation prohibiting him from accessing the internet. As just stated, proof of a single violation of the

conditions of probation is sufficient to support the decision to revoke probation. *Id.* Roberts asserts that there were mitigating circumstances justifying his violation of probation, but those circumstances do not change the fact that he violated his probation and that he was required to comply with the terms of his probation "strictly." *See Cain*, 30 N.E.3d at 732 (quoting *Woods*, 892 N.E.2d at 641). Moreover, although Roberts claims he did not remember that he was not allowed to use the internet, the evidence introduced at trial indicated that he was informed of the prohibition. He initialed that term and signed the document as a whole, acknowledging that he had read it. He also told the trial court that he had gone over the terms with his lawyer. In light of these factors, we conclude that the trial court did not abuse its discretion in revoking Roberts' probation, and we need not address Roberts' other violations. *See Bussberg*, 827 N.E.2d at 44.

### 2. Suspended Sentence

[15] Next, Roberts argues that, even if the trial court did properly revoke his probation, the court abused its discretion in ordering him to serve his entire previously suspended sentence in the DOC. He claims that although he violated the terms of his probation, he had taken steps to cure the violations by the time of the probation revocation hearing. Specifically, he had stopped using the internet, he had found a new job, and he was beginning to pay his arrearage in fees.

[16] Under the Indiana Code, once a trial court has found that a person has violated a condition of probation within the probationary period, the trial court shall:

> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>
> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
>
> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

I.C. § 35-38-2-3(h).

[17] In support of his argument that the trial court should have considered that he was working to remedy his violations, Roberts cites *Ripps v. State*, 968 N.E.2d 323, 328 (Ind. Ct. App. 2012), where we held that the trial court had abused its discretion in revoking Ripps' probation and ordering his entire sentence executed. Ripps had been convicted of child molesting as a Class C felony and then had violated the terms of his probation by residing within 1,000 feet of a youth program center and failing to informing all people living at his residence of his sexual conviction. *Id.* at 324. Based on this violation, the trial court had revoked Ripps' probation and ordered the balance of his suspended sentence to be executed. *Id.* at 325. On appeal, we held that the trial court had abused its discretion because:

> Ripps was sixty-nine years old and suffering from serious health issues, including terminal cancer; he was attempting to adhere to his probation conditions, as evidenced by his going to the sheriff's office to register his new address; although he was

initially in violation of the residency restriction, evidence reveals he was taking steps to correct the violation by finding a new residence; while he did live within 1,000 feet of the public library, this was only so by about twenty feet and some ambiguity exists in how this distance was measured; and, last, Ripps previously served time in prison from a crime that was later vacated as violative of our constitutional ex post facto provision.

*Id.* at 328. Roberts argues that we should likewise conclude that the trial court abused its discretion here because he had also attempted to cure his probation violations.

[18] However, we see significant differences between Ripps and Roberts. Whereas Ripps was only found to have violated one condition of his probation, Roberts was found to have violated three conditions. Further, as evidenced by the excerpt from our opinion in *Ripps* above, there was some ambiguity about whether Ripps had even violated his probation; Ripps' violation, if it had occurred, had been slight; and there was evidence that Ripps had not intended to violate his probation. That is not the case here.

[19] Instead, there was evidence here that Roberts knew he was violating his probation when he accessed the internet and that he was specifically warned he would be terminated from his employment if he left work. Despite these facts, Roberts still used Facebook and left work. Further, as the trial court stated when it ordered Roberts to serve the remainder of his suspended sentence in the DOC, Roberts had previously been placed in less restrictive placements and had continued to violate the rules of those placements. Accordingly, we conclude

that the trial court did not abuse its discretion in ordering Roberts to serve the remainder of his suspended sentence in the DOC.

Affirmed.

Baker, J., and Bradford, J., concur.